UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                    :
TIMOTHY HOFFNER,                    :          CASE NO. 3:05-cv-00687
                                    :
            Petitioner,             :
                                    :
vs.                                 :          OPINION & ORDER
                                    :          [Resolving Doc. No. 29.]
MARGARET BRADSHAW, WARDEN,          :
                                    :
            Respondent.             :
                                    :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On January 6, 2006, Timothy Hoffner ("Hoffner") filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254.  In seeking relief in this death penalty case, Petitioner Hoffner says that constitutional error attended his conviction for aggravated murder and his sentence of death. [Doc. 29.]

For the reasons stated below, the Court **DENIES** Hoffner's petition for a writ of habeas corpus.


I.  **Factual Background**

On direct review, the Ohio Supreme Court set forth the general facts of this case.  Under 28 U.S.C. § 2254(e)(1), the Court presumes the state court's factual findings to be correct unless the Petitioner shows by clear and convincing evidence that the findings are erroneous.  The Ohio Supreme Court described the facts of this case:

Case No. 3:05-cv-00687
Gwin, J.

{¶ 1}  On September 22, 1993, Timothy L. Hoffner, defendant-appellant, and Archie Dixon kidnapped and robbed Christopher Hammer, then drove Hammer to a remote area where they buried him alive in a shallow grave and left him to die.

{¶ 2}  Hoffner was convicted of the aggravated murder, aggravated robbery, and kidnapping of Hammer, and he was sentenced to death.

{¶ 3}  Hoffner and Hammer met in August 1993.  For a short period of time in mid-August 1993, Hoffner, Hammer, and Dixon lived at the Toledo home of Kirsten Wilkerson, Dixon's girlfriend.

{¶ 4}  In early September 1993, Michael Elting, a friend of Hammer, Hoffner, and Dixon, borrowed Hammer's car, a 1987 Dodge Daytona, to go to the movies with Hoffner and Dixon.  According to Elting, Hoffner and Dixon discussed "how to get rid of [Hammer's] car," and Hoffner said that he knew a place where he could take the car, presumably after Hammer was killed.  Approximately one month after Hammer's disappearance, Elting discovered Hammer's car at a used car lot in Toledo.

{¶ 5}  On the afternoon of September 21, Dixon told Wilkerson that he and Hoffner were going to "get [Hammer] tonight."  Wilkerson understood this to mean that Dixon and Hoffner were going to kill Hammer.

{¶ 6}  In the early morning of September 22, Hoffner, Dixon, and Hammer went to Wilkerson's house.  Once there, Hoffner and Dixon attacked Hammer.  Hoffner restrained Hammer in a headlock while Dixon beat him.  Hoffner tried to break Hammer's neck, and Dixon struck Hammer in the head with a wine bottle.  Hoffner and Dixon then tied Hammer to a bunk-bed ladder, and Dixon went through Hammer's wallet, taking out his money, birth certificate, and Social Security card.  Then Hoffner and Dixon discussed how they should dispose of Hammer's body.

{¶ 7}  While Hammer remained tied to the bunk-bed ladder, Hoffner and Dixon left Wilkerson's house to dig a grave.  Hoffner and Dixon returned to Wilkerson's house and they, along with Wilkerson, drove Hammer, blindfolded, to the gravesite in Hammer's car.  Wilkerson stayed at the car while Hoffner and Dixon walked Hammer into the woods, where they permitted Hammer to smoke a cigarette.  Then they gagged and again blindfolded Hammer, tied his hands and feet behind his back, grabbed him by his arms and legs, and dropped him into the grave, still alive.  At one point, Hammer was able to remove the gag from his mouth and free one of his legs.  Hoffner jumped into the grave and placed his foot over Hammer's mouth when Hammer yelled for help.  Hoffner and Dixon then held Hammer down and covered him with dirt.  After Hammer was completely buried, Hoffner and Dixon walked back and forth across the grave, packing down the dirt.  Hoffner, Dixon, and

-2-

Case No. 3:05-cv-00687
Gwin, J.

Wilkerson then returned to Wilkerson's house in Hammer's car.

{¶ 8}  After killing Hammer, Hoffner and Dixon carried out their plan to sell his car. On September 25, Dixon obtained a state of Ohio identification card with his photograph but in Hammer's name.  On September 30, Hoffner and Dixon went to the automobile title bureau, where Dixon obtained a duplicate certificate of title for Hammer's car using the fraudulent ID card.  Hoffner and Dixon then took Hammer's car to a used car lot, where they sold the car for $2,800.

{¶ 9}  By November 8, 1993, police officers investigating Hammer's disappearance had located his Dodge Daytona at a used car lot in Toledo, had confirmed its unauthorized sale on September 30, and had identified Dixon as the prime suspect in the vehicle transaction.  On November 9, police went to Wilkerson's home and arrested Dixon for forgery.  The police also executed a search warrant at Wilkerson's home.    During the search, police questioned Hoffner regarding Hammer's disappearance. Hoffner denied involvement but made statements implicating Dixon. Hoffner agreed to accompany police detectives downtown to make a statement.  On the way to the station, Hoffner told police that Dixon had shown him the location of Hammer's body, and he then led police to the gravesite.

{¶ 10}  Once at the station, police read Hoffner his *Miranda* rights, but Hoffner was not placed under arrest.  Hoffner waived his rights and gave a taped account of Dixon's involvement in Hammer's murder.  After Hammer's body was discovered, Dixon confessed to Hammer's murder and also implicated Hoffner.  Police subsequently arrested Hoffner on November 10 at his mother's home.  At police headquarters, detectives read Hoffner his *Miranda* rights, and Hoffner signed a waiver-of-rights form.  Hoffner then gave a taped statement confessing to his part in Hammer's death.

{¶ 11}  Cynthia Beisser, Deputy Coroner of Lucas County, performed an autopsy and concluded that Hammer had died of asphyxiation.  According to Dr. Beisser, Hammer likely died within five minutes of being buried alive, and he might have remained conscious during the first two to three minutes.

*State v. Hoffner*, 811 N.E.2d 48, 50-52 (Ohio 2004).

## II.  Procedural Background

### A.  Indictment and Conviction

The Ohio Supreme Court summarized the indictment and conviction as follows:

-3-

Case No. 3:05-cv-00687
Gwin, J.

{¶ 12}  A grand jury indicted Hoffner, Dixon, and Wilkerson for the aggravated murder, kidnapping, and aggravated robbery of Hammer.  Hoffner was indicted on three counts of aggravated murder.  Count One of the indictment charged Hoffner with aggravated murder involving prior calculation and design. R.C. 2903.01(A).  Count Two charged Hoffner with aggravated murder while committing kidnapping, and Count Three charged Hoffner with aggravated murder while committing aggravated robbery, both pursuant to R.C. 2903.01(B).  Hoffner was additionally indicted for kidnapping in Count Four, aggravated robbery in Count Five, and three counts of forgery in Counts Six, Seven, and Eight.

{¶ 13}  The three counts of aggravated murder each contained two R.C. 2929.04(A)(7) death penalty specifications.  The first specification charged aggravated murder during a kidnapping, and the second charged aggravated murder during an aggravated robbery.

{¶ 14}  The jury convicted Hoffner as charged and recommended the death penalty.  Thereafter, the trial court sentenced Hoffner to death for the murder, to ten to 25 years each for kidnapping and aggravated robbery, and to 18 months for each forgery charge.  On appeal, the court of appeals affirmed Hoffner's convictions and death sentence.

{¶ 15}  [The Ohio Supreme Court] previously upheld identical convictions and the death sentence for Dixon.  *See State v. Dixon*, 101 Ohio St.3d 328, 2004 Ohio 1585, 805 N.E.2d 1042.

*State v. Hoffner*, 811 N.E.2d 48, 52 (Ohio 2004).

**B.  Direct Appeal**

Petitioner Hoffner filed a direct appeal of his conviction and sentence to the Ohio Court of Appeals for the Sixth District.  *See State v. Hoffner*, 2001 WL 279768, at *4-6 (Ohio Ct. App., Lucas County, Mar. 23, 2001).  With his direct appeal, Hoffner included arguments that the trial court erred when it denied his motion to suppress oral statements to police officers and evidence from the search of his automobile.  Hoffner also argued that the trial court should have required him to explicitly waive his right to testify.  Among other arguments, Hoffner additionally said that he was denied his right to the effective assistance of counsel.  On March 23, 2001, the Ohio Sixth District Court of

Case No. 3:05-cv-00687
Gwin, J.

Appeals affirmed Hoffner's conviction and sentence.  *State v. Hoffner*, 2001 WL 279768 (Ohio Ct. App., Lucas County, Mar. 23, 2001).

Hoffner then appealed to the Ohio Supreme Court.  Among other arguments, Hoffner again claimed that a statement he gave to police officers should have been suppressed, that evidence obtained from a search should have been suppressed, that he was denied the effective assistance of counsel, and that the trial court erred in failing to adequately advise Hoffner of his right to testify and to obtain an explicit waiver of that right.  *See Appendix of State v. Hoffner*, 811 N.E.2d 48, 67-68 (Ohio 2004).  On July 14, 2004, the Ohio Supreme Court affirmed the Petitioner's conviction and sentence.  *State v. Hoffner*, 811 N.E.2d 48 (Ohio 2004).

The United States Supreme Court denied Hoffner's petition for a writ of certiorari on January 10, 2005.  *Hoffner v. Ohio*, 543 U.S. 1058 (2005).

## C. Post-Conviction Proceedings

While pursuing his direct appeal, Hoffner filed a post-conviction petition with the trial court, which the court dismissed without a hearing.  *See State v. Hoffner*, Case No. G-4801-CR-0199307212 (Lucas County Ct. of Common Pleas, Apr. 17, 2001).  Hoffner appealed that decision to the Ohio Sixth District Court of Appeals.  With that appeal from the denial of state post-conviction relief, Hoffner generally complained that the trial court should have afforded him a hearing, that the post-conviction procedures failed to provide him with an adequate corrective process, and that cumulative trial errors denied him due process.  *See State v. Hoffner*, 2002 WL 31162813, at *1 (Ohio Ct. App., Lucas County, Sept. 30, 2002).  On September 30, 2002, the Sixth District Court of Appeals affirmed the trial court's denial of post-conviction relief.  *State v. Hoffner*, 2002 WL 31162813 (Ohio Ct. App., Lucas County, Sept. 30, 2002).

Case No. 3:05-cv-00687
Gwin, J.

Hoffner appealed the denial of post-conviction relief to the Ohio Supreme Court. On September 1, 2004, the Ohio Supreme Court declined jurisdiction over the case and dismissed the appeal as not involving any substantial constitutional question. *State v. Hoffner*, 814 N.E.2d 489 (Ohio 2004).

### D.  Federal Habeas Corpus

On January 6, 2006, Hoffner filed this petition for a writ of habeas corpus. [Doc. 29.] With his habeas petition, he argues thirteen grounds for relief:

*First Claim for Relief:* Improper Weighing of Circumstances

*Second Claim for Relief*: Ineffective Assistance of Counsel: [Guilt] Phase

*Third Claim for Relief*: Ineffective Assistance of Counsel: Penalty Phase

*Fourth Claim for Relief*: Ineffective Assistance of [Appellate] Counsel: Direct Appeal

*Fifth Claim for Relief*: Sentencing Unfairness: [Un-admitted] Evidence & Improper Burden

*Sixth Claim for Relief*: Right to Testify

*Seventh Claim for Relief*: *Miranda* Violation

*Eighth Claim for Relief*: Residual Doubt as Mitigation Factor

*Ninth Claim for Relief*: Caldwell – Jury Recommendation

*Tenth Claim for Relief*: "Reasonable Doubt" Definition

*Eleventh Claim for Relief*: Proportionality

*Twelfth Claim for Relief*: Cumulative Error

*Thirteenth Claim for Relief*: Unconstitutional Death Penalty Scheme

Case No. 3:05-cv-00687
Gwin, J.

[Doc. 29.][1/]

## III.  Initial Considerations

### A.  Legal Standard: The AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs this Court's review of the state court decisions regarding Hoffner's case.  The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  *See also* *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court has outlined the proper application of § 2254(d)(1) in *Williams v. Taylor*, 529 U.S. 362 (2000) and its progeny.  To justify a grant of habeas relief under § 2254(d)(1), "a federal court must find a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision."  *Miller*, 269 F.3d at 614 (internal quotations omitted) (citing *Williams*, 529 U.S. at 412).  The *Williams* Court interpreted the "contrary to" clause in the following manner:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme

---

[1/] The Petitioner ultimately concedes some of these grounds.  The Court will address each ground below, and as it addresses each ground, it will indicate if the Petitioner has conceded that ground.

Case No. 3:05-cv-00687
Gwin, J.

Court precedent and arrives at a result opposite to ours.

*Williams*, 529 U.S. at 405.  The Supreme Court also construed the "unreasonable application" clause: "[W]hen a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." *Id.* at 409.  However, the Sixth Circuit cautions, even if a federal court may determine that a state court incorrectly applied federal law, the court still may not grant relief unless it also finds that the state court ruling was unreasonable.  *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

A violation of state law is only cognizable in a federal habeas action if it amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.  Otherwise, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Moreover, the factual findings of a state court are presumed to be correct.  A federal court may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous.  *See* 28 U.S.C. § 2254(e)(1).

**B.  Exhaustion**

The AEDPA requires a prisoner to exhaust his available state court remedies, i.e., present them to the state's highest court, before petitioning for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A).  The statute provides an exception to this requirement where a petitioner can show either an absence of available state corrective procedures or that circumstances exist that render such

Case No. 3:05-cv-00687
Gwin, J.

procedures ineffective to protect his rights.  28 U.S.C. § 2254(b)(1)(B).  A state may waive the AEDPA's exhaustion requirement when it does so expressly.  28 U.S.C. § 2254(b)(3).

Here, in response to Hoffner's present petition, Respondent Bradshaw does not expressly waive the AEDPA's exhaustion requirement, although she concedes that Hoffner has exhausted all of his habeas claims.[2]

The Court concludes that Petitioner Hoffner has exhausted the asserted grounds for relief.[3]

### C. Procedural Default

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729 (1991).  The procedural default doctrine bars habeas review of federal claims "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."  Id. at 730.  In such cases, often "the state judgment rests on independent and adequate

---

[2] In her Return, the Respondent explained this position:

Respondent observes that all of [Hoffner's] claims are exhausted.  The claims are exhausted because they were either raised properly on direct appeal to the Ohio Supreme Court or there is no remaining avenue by which [Hoffner] can now fairly present these claims to the state courts.

By pointing out that [Hoffner's] claims have been exhausted because there are no remaining state court remedies, Respondent expressly **does not** waive the exhaustion requirement. 28 U.S.C. §2254(b)(3); *compare Dennis v. Mitchell*, 68 F. Supp. 2d 863, 879 (N.D. Ohio 1999) (finding Respondent waived exhaustion requirement by stating that claims in petition were exhausted) with Habeas Rule 5 (Respondent's answer shall state whether petitioner has exhausted remedies).  Respondent wishes it to be clear that by stating her view that [Hoffner] has exhausted all claims, she does not intend to waive the exhaustion requirement.

[Writ of Return, 45 at 34.]

[3] The Court will describe how the Petitioner belatedly exhausted his fourth claim in the Ohio courts in its discussion of that claim.

Case No. 3:05-cv-00687
Gwin, J.

state procedural grounds." *Id.*

For example, under Ohio law, on direct appeal, a petitioner must raise all claims of which he knew or should have known at the time of trial or direct appeal. Ohio's statute provides an avenue of relief, namely post-conviction review, for unknown or reasonably unknowable claims; namely, Ohio's "post-conviction relief statute" provides in pertinent part:

> Any person . . . convicted of a criminal offense . . . and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, . . . may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

O.R.C. § 2953.21(A)(1)(a).

This statute bars post-conviction consideration of any issue that a petitioner either did, or could have, fully litigated before conviction or on direct appeal from that conviction, but did not. *See State v. Perry*, 226 N.E.2d 104, 105-106, 107 (Ohio 1967), ¶7. *See also State v. Combs*, 652 N.E.2d 205, 209 (Ohio App. 1st Dist. 1994) (finding that claims that could have been raised based on the original trial record on direct appeal were barred by *res judicata*). The *Perry* court stated:

> Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*Perry*, 226 N.E.2d at 106, ¶9.

Under *Perry*, Ohio courts apply *res judicata* to bar consideration of federal claims that were not timely asserted in state court proceedings. *See, e.g.*, *Morales v. Coyle*, 98 F. Supp. 2d 849, 860-61 (N.D. Ohio 2000). Further, *Perry*'s procedural bar acts as an adequate and independent state

Case No. 3:05-cv-00687
Gwin, J.

ground that forecloses federal habeas review.[4/]  *See, e.g.,* Byrd v. Collins, 209 F.3d 486, 521 (6th Cir. 2000).

If the district court concludes that the state prisoner has procedurally defaulted his federal claims in state court, federal review is barred unless the prisoner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  *See also* Bousley v. United States, 523 U.S. 614, 622 (1998).  To demonstrate "cause," a petitioner ordinarily must show that some factor external to his defense impeded his counsel's efforts to comply with state procedural rules.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  An adequate demonstration of "prejudice" requires a petitioner to show a disadvantage "infected" the trial proceedings with constitutional error.  United States v. Frady, 456 U.S. 152, 169 (1982).  Absent "cause" or "prejudice," a federal court may not review procedurally defaulted issues unless the petitioner shows that the failure to consider the issues will result in a fundamental miscarriage of justice.  *See* Coleman, 501 U.S. at 750.

The Sixth Circuit provides a four-step analysis to determine whether a claim has in fact been procedurally defaulted.  *See* Maupin v. Smith, 785 F.2d 135 (6th Cir. 1986).  Under this test, the Court determines: (1) whether the petitioner failed to comply with an applicable state procedural

---

[4/]  The Ohio Supreme Court recognizes an exception to the *Perry* rule.  Specifically, "where the record does not disclose that the issue of competent [trial] counsel has been adjudicated," *res judicata* cannot bar an Ohio post-conviction petition.  *See* Morales, 98 F. Supp. 2d at 861 (citing State v. Hester, 341 N.E.2d 304 (Ohio 1976)).

The Ohio Supreme Court subsequently modified the *Hester* exception, finding that, "[w]here the defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel, and said issue could fairly have been determined without resort to evidence outside the record, res judicata is a proper basis for dismissing defendant's petition for post-conviction relief." *See* Morales, 98 F. Supp. 2d at 861 (quoting State v. Cole, 443 N.E.2d 169 (Ohio 1982)).

These modifications to the *Perry* rule have led federal habeas courts to conclude that Ohio's post-conviction statute, upon which *Perry* rests, satisfies due process.  *See* Morales, 98 F. Supp. 2d at 861.

-11-

Case No. 3:05-cv-00687
Gwin, J.

rule; (2) whether the state courts actually enforced the state procedural sanction in the petitioner's case; (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and (4) if the previous elements are met, whether the petitioner has demonstrated "cause" for the default and "prejudice" as a result of the alleged federal law violation, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 138-39.

In determining whether a state court enforced the procedural rule in the petitioner's case so as to bar federal habeas review, the federal court must look to "the last *explained* state-court judgment." *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000) (emphasis in original).

## IV.  Grounds for Relief

### A.  First Ground for Relief: Improper Weighing of Circumstances

In his first ground for relief, Hoffner says that the sentencing judge wrongly considered the nature and circumstances of the crime as an aggravating circumstance and unconstitutionally considered the various elements of the statutory aggravating factor found in Ohio Revised Code § 2929.04(A)(7) as separate aggravating factors, thereby multiplying the value of what should have been one single aggravating factor. [Docs. 29 at 8-10; 50 at 15-23.]  The Respondent concedes that Hoffner properly preserved this claim for review.  [Doc. 45 at 41.]  However, both of Hoffner's sub-claims fail.

### a.  Nature and Circumstances of Crime

First, the Court addresses the Petitioner's argument that the trial court unconstitutionally

-12-

Case No. 3:05-cv-00687
Gwin, J.

considered the nature and circumstances of Hoffner's crime as an aggravating circumstance.  In

support of his argument that the trial improperly applied Ohio law, Hoffner references the

following portion of the sentencing opinion:

> Sympathy for the defendant's mistreatment as a child, however, can in no way excuse
> the depraved, violent and calculated nature of the acts he committed against
> Christopher Hammer.  It was, and is the conclusion of this Court that the aggravating
> circumstances so clearly demonstrated by the evidence at trial, far, far outweighed
> the modest cumulative mitigating factors presented in this case during the penalty
> phase.  This conclusion is compelled by the balancing process mandated by ORC
> Sections 2929.03 and 2929.04.

[Doc. 29 at 8.] (quoting Appendix Volume 2 at 252.) (emphasis added by Hoffner).  In addressing

Hoffner's claim that the sentencing opinion improperly weighed the "depraved" and "violent" nature

of the crime as aggravating circumstances and against the mitigating factors, the Supreme Court of

Ohio said:

> {¶ 77}   Hoffner [] contends that the trial court considered the nature and
> circumstances of the offense as an aggravating circumstance. . . .  For the following
> reasons, we find that no prejudicial error occurred.
>
> {¶ 78}   First, the trial court did not refer to the nature and circumstances of the
> offense as "aggravating circumstances."  Prior to sentencing, the trial court merged
> the three counts of aggravated murder into one count and sentenced Hoffner only in
> relation to Count I, the purposeful killing of Hammer with prior calculation and
> design. See R.C. 2903.01(A).  In its sentencing opinion, the trial court set forth the
> two R.C. 2929.04(A)(7) capital specifications charged in Count I, and then
> summarized the evidence establishing Hoffner's guilt of the offenses and
> specifications charged.  The trial court also evaluated Hoffner's mitigation evidence
> and, as noted above, concluded that the aggravating circumstances outweighed the
> modest cumulative mitigating factors.  The trial court's opinion reflects the trial
> court's understanding of the difference between statutory aggravating circumstances
> and facts describing the nature and circumstances of the offense. See, e.g., *State v.
> Clemons* (1998), 82 Ohio St.3d 438, 447, 696 N.E.2d 1009.
>
> {¶ 79}   Second, a trial court "may rely upon and cite the nature and circumstances
> of the offense as reasons supporting its finding that the aggravating circumstances
> were sufficient to outweigh the mitigating factors."  *State v. Stumpf* (1987), 32 Ohio

Case No. 3:05-cv-00687
Gwin, J.

> St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus.  See *State v. Bradley*, 42
> Ohio St.3d at 148, 538 N.E.2d 373; *State v. Wogenstahl* (1996), 75 Ohio St.3d 344,
> 361, 662 N.E.2d 311.  In *State v. Steffen* (1987), 31 Ohio St.3d 111, 117, 31 OBR
> 273, 509 N.E.2d 383, we noted that "the nature and circumstances of certain offenses
> will be such that no mitigating feature can be extracted."  The trial court's comments
> here can be understood as justifying its conclusion that no mitigating value existed
> in the nature and circumstances of this particular offense.

*State v. Hoffner*, 811 N.E.2d 48, 60-61 (Ohio 2004).

The Court has reviewed the sentencing opinion and finds no violation of or unreasonable
application of federal law regarding the trial court's consideration of Hoffner's role in Hammer's
murder.  At its core, Hoffner complains that Ohio courts misapplied Ohio state law, not that they
violated federal law.  Habeas courts cannot review a violation of state law in a § 2254 proceeding
unless such violations are of constitutional magnitude.  *Estelle v. McGuire*, 502 U.S. 62, 67-68
(1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on
state-law questions.")  Even if state-law trial errors occur, they are reviewed in habeas actions only
if they created a fundamental unfairness sufficient to violate a petitioner's Fourteenth Amendment
right to due process.

Hoffner complains that the trial court considered the nature and circumstances of the offense
as an aggravating circumstance.  It is not clear that the trial court did so.  Even if the trial court had
made such an error though, the Ohio Supreme Court independently weighed the aggravating and
mitigating evidence and found the death penalty warranted.  Hoffner does not point to any language
in the Ohio Supreme Court's independent review suggesting that it wrongly considered the nature
and circumstances of the crime as aggravating factors.

The Sixth Circuit recently addressed a similar claim:

At most . . . consider[ing] aggravating factors beyond those defined by statute would

-14-

Case No. 3:05-cv-00687
Gwin, J.

> be violating state law, which establishes a federal constitutional claim only when the state-law error so infected the entire trial that the resulting conviction violates due process. . . . Even if a state-law error had occurred, moreover, the Ohio Supreme Court's reweighing of the aggravating and mitigating factors would cure the error[.]

*Hill v. Mitchell*, 400 F.3d 308, 335 (6th Cir. 2005) (internal citations and quotation marks omitted).

As the Sixth Circuit found in *Hill*, the Ohio Supreme Court here re-weighed the aggravating and mitigating factors and found the death penalty proper; in response to Hoffner's concern, the state's high court considered the nature and circumstances of the crime only as to mitigation.  *See State v. Hoffner*, 811 N.E.2d 48, 62-66 (Ohio 2004) ("Upon a review of the evidence in mitigation, we find nothing in the nature and circumstances of the offenses to be mitigating.")  This independent appellate review cured any alleged error.  As a result, Hoffner makes no showing of fundamental unfairness, and this claim fails.

**b.  Alleged Multiplying of Aggravating Circumstances**

Second, the Ohio Supreme Court did not unreasonably apply, or rule contrary to, federal law regarding Hoffner's claim that the trial court improperly multiplied the evidence in aggravation.  In making this argument, Hoffner references the following part of the trial court's sentencing opinion: "[I]t was established beyond a reasonable doubt that the aggravated murder" was committed "in the commission of both a kidnapping and an aggravated robbery, and that he also committed the aggravated murder with prior calculation and design."  [Docs. 29 at 9-10, 50 at 20.] (quoting Appendix Vol. 2 at 247.)  Hoffner says that the "trial court improperly viewed alternative elements [of the capital specifications] as separate aggravating circumstances and thus 'wrongfully multiplied a single circumstance into [more than one].'"  [Doc. 29 at 9.]

With this comment, the Ohio trial court was merely summarizing the verdicts against

-15-

Case No. 3:05-cv-00687
Gwin, J.

Hoffner, including the murder specifications.  Ohio's criminal statute provides, in relevant part:

> Imposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment . . . and proved beyond a reasonable doubt: . . .
>
>> (7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

O.R.C. § 2929.04(A).[5/]  The jury found Hoffner guilty of three separate counts of aggravated murder: the purposeful killing of Christopher Hammer with prior calculation and design, the purposeful killing of Hammer during the commission of a kidnapping, and the purposeful killing of Hammer during the commission of an aggravated robbery.  The jury also found Hoffner guilty of two identical capital specifications found in O.R.C. § 2929.04(A)(7) for each count–one based on kidnapping and one based on aggravated robbery.  When the trial court made the comment Petitioner cites, the court was merely reciting the verdicts returned by the jury.  Elsewhere in the opinion the trial court makes clear that Petitioner is being sentenced only for the first count with the accompanying capital specifications.

The Ohio Supreme Court responded to this second sub-claim as follows:

{¶ 80} Third, the trial court did not "treble" the weight of the "sole" aggravating

---

[5/] The trial court described the specifications as follows: "That the defendant committed the aggravated murder of Christopher Hammer while committing the specific felony . . . , and that the defendant was the principal offender in the commission of the aggravated murder and/or committed the aggravated murder with prior calculation and design." [Apx. Vol. 2 at 244-45.] (emphasis added).  The Court notes that the trial court should have clarified that the (A)(7) specification refers to the principal offender and prior calculation and design elements only in the alternative as described in the statutory language.  These two elements may not be considered conjunctively or as separate and distinct aggravating circumstances.

Case No. 3:05-cv-00687
Gwin, J.

circumstance. Two aggravating circumstances were proven, not one, and, therefore, we find no reversible error in the trial court's separate reference to kidnapping, robbery, and prior calculation and design. In relation to its guilty verdict on Count I, the jury found that Hoffner had committed the aggravated murder with prior calculation and design. The trial court's comments about prior calculation and design merely reflected the jury's verdict. Moreover, the evidence proved that Hoffner was a principal offender in the aggravated murder, and the trial court specifically found that Hoffner was a principal offender. The trial court's opinion does not demonstrate that the trial court weighed prior calculation and design as a separate and distinct aggravating circumstance. *Cf. State v. Penix* (1987), 32 Ohio St.3d 369, 370-372, 513 N.E.2d 744; and *State v. Green*, 90 Ohio St.3d at 361, 738 N.E.2d 1208.

*State v. Hoffner*, 811 N.E.2d 48, 61 (Ohio 2004).  Once again, any possible state law errors made by the trial judge in this weighing do not rise to a federal constitutional claim.  *See Hill*, 400 F.3d at 335.  The trial court did not improperly consider the kidnapping and aggravated robbery.  Even if the trial court erred in this regard, the appellate courts re-weighed the aggravating and mitigating factors independently and came to the same conclusion as the trial judge.[6/]  *See Wickline v. Mitchell*,

---

[6/] Hoffner replies that the Ohio Supreme Court also improperly weighed aggravating circumstance*s*, rather than one aggravating circumstance, against the mitigating factors.  Hoffner's indictment charged him with two specifications for each murder count under O.R.C. 2929.04(A)(7), one for kidnapping and one for aggravated robbery.

It is not clear that these two specifications should have been considered as one aggravating circumstance under Ohio law.  *See State v. Dixon*, 101 Ohio St.3d 328, 345-46 (Ohio 2004) (although not contested, Ohio Supreme Court treating the same two specifications that Hoffner faced as two separate aggravating circumstances). *See also Wogenstahl v. Mitchell*, 2007 WL 2688423, at *80-81 (S.D. Ohio 2007) (finding it proper to treat aggravating burglary and kidnapping as two separate aggravating circumstances and even if they should have been merged, this error would not rise to the level of a constitutional violation).  *But see State v. Jenkins*, 15 Ohio St.3d 164, 197-98 (Ohio 1984) (finding merger proper of aggravated robbery and kidnapping specifications into one aggravating circumstance: "implicit within every robbery (and aggravated robbery) is a kidnapping.")

Moreover, the Ohio Court of Appeals specifically acknowledged Hoffner's concern and re-weighed the merged aggravating circumstance against the mitigating factors while implicitly cautioning against the use of the plural reference to "circumstances" to avoid the appearance of wrongly multiplying the weight of the aggravating factors.  *See State v. Hoffner*, 2001 WL 279768, *16, fn. 8 (Ohio Ct. App., Lucas County, Mar. 23, 2001).  Hoffner does not challenge the appellate court's re-weighing; thus, any alleged error is cured by this re-weighing.

Finally, to the extent the Ohio Supreme Court refers to aggravating circumstances in the plural, Hoffner presents no other evidence that the Ohio Supreme Court improperly multiplied the weight due.  Further, whether the jury and courts should have merged the two specifications into one aggravating circumstance rather than consider them as two, a merger would not change the evidence the courts were to consider.  *See Mitts v. Bagley*, 2005 WL 2416929, at *11 (N.D. Ohio 2005) (in context of jury instructions alleged to be improper for failure to merge, "although the trial court erred in not merging the specifications, the weight of the aggravating circumstances was not inflated, rendering the weighing process invalid.").

Case No. 3:05-cv-00687
Gwin, J.

319 F.3d 813, 824 (6th Cir. 2003) ("Both Supreme Court precedent and Ohio law allow reweighing

by the appellate courts when the sentencer has considered an invalid aggravating circumstance.").

Therefore, the Ohio courts did not act contrary to or unreasonably apply clearly established federal

law.  Thus, the Court cannot issue Hoffner a writ of habeas corpus based on this claim.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a

constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; Fed. R.

App. P. 22(b).

**B.  Second Ground for Relief**: **Ineffective Assistance of Counsel: Guilt Phase.**

In his second ground for relief, Hoffner says that his attorney provided ineffective assistance

during the guilt phase of the trial in two ways.  First, Hoffner says that his trial counsel failed to

argue that Dixon, not Hoffner, acted as the principal offender in the murder of Hammer.  [Docs. 29

at 11-13, 50 at 26-31.]  Second, Hoffner says that his trial attorney failed to seek suppression of

Hoffner's taped confession to the murder on the ground that he had requested counsel before the

confession.  [Docs. 29 at 13, 50 at 31-32.]

Petitioner first raised these arguments during post-conviction proceedings, not on direct

appeal.  The Ohio Sixth District Court of Appeals found both claims barred by *res judicata* because

Hoffner could have raised them on direct appeal but did not.  *State v. Hoffner*, 2002 WL 31162813,

at *5 (Ohio Ct. App., Lucas County, Sept. 30, 2002).  Despite this procedural bar, Hoffner requests

that the Court consider this claim saying he can demonstrate cause and actual prejudice.  Hoffner

also says that his ineffective assistance claim requires evidence outside of the record and therefore

Case No. 3:05-cv-00687
Gwin, J.

should not have been barred by the *res judicata* doctrine.[7/]

Ohio says that Hoffner procedurally defaulted his ineffective assistance of counsel claims. "When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006), quoting *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000).

With regard to Hoffner's claims concerning ineffective assistance of counsel, Ohio says these claims are barred by Ohio's procedural *res judicata* rule. Under the Ohio rule on *res judicata*, "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, at paragraph nine of the syllabus. To secure a hearing on an ineffective assistance of counsel claim in an Ohio post-conviction relief case, the petitioner

_____

[7/] The Petitioner claims that he submitted the affidavit of an Ohio Public Defender, which he says constitutes evidence outside the record, to support his ineffective assistance claim. [Appendix Vol. 6, p. 113-126.] This claim did not require this evidence from outside the record. Petitioner's submission of an affidavit by an Ohio Public Defender may support the argument that this lapse fell below an objective level of reasonableness, but it was certainly not required to bring the claim on direct appeal.

As to Hoffner's first and second sub-claims, he also suggests that he relies on evidence outside of the record in the form of his affidavit describing how Dixon, and not he, led the two's criminal actions and stating that he had told his trial counsel that he had been denied counsel before his confession. As the Ohio Supreme Court found, the Petitioner's self-serving affidavit is insufficient evidence to warrant a hearing in post-conviction proceedings and to overcome the *res judicata* bar. *See State v. Combs*, 100 Ohio App.3d 90, 652 N.E.2d 205 (Ohio App. 1994) ("Finally, evidence out of the record in the form of petitioner's own self-serving affidavit alleging a constitutional deprivation will not compel a hearing.")

-19-

Case No. 3:05-cv-00687
Gwin, J.

"must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." *State v. Cole*, 2 Ohio St. 3d 112, 114 (Ohio 1982).

Upon appeal from the denial of Hoffner's post-conviction claim, the Ohio Sixth District Court of Appeals denied Hoffner's arguments that his counsel was ineffective for failing to make the principal offender argument or the claim about officers taking a statement after Hoffner allegedly asked for counsel.  The Ohio Court of Appeals found that the claims could have been raised on direct appeal based on the record evidence.  *State v. Hoffner*, 2002 WL 31162813, at *5 (Ohio Ct. App., Lucas County, Sept. 30, 2002).  The Ohio Supreme Court declined jurisdiction over any appeal from this ruling.  *State v. Hoffner*, 814 N.E.2d 489 (Ohio 2004).

Under Ohio's procedural *res judicata* rule, the Ohio courts denied Hoffner's ineffective assistance of counsel claim presented here.  To examine whether Hoffner overcomes this independent procedural ruling, this Court employs the *Maupin* standard.  That test examines (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the procedural sanction; (3) whether the state procedural bar is an adequate and independent state ground on which the state can foreclose federal review; and (4) whether the petitioner can demonstrate cause for, and actual prejudice resulting from, the procedural default, or that the failure to consider the claims will result in a fundamental miscarriage of justice.  *Maupin v. Smith*, 785 F.2d 135, 138-39 (6th Cir. 1986).

Applying the *Maupin* test, Hoffner failed to raise these ineffective assistance of counsel claims on direct review, and the Ohio Court of Appeals enforced the *res judicata* rule in denying these claims.  With regard to the third *Maupin* factor, Ohio's rule requiring claims be raised on direct

-20-

Case No. 3:05-cv-00687
Gwin, J.

appeal or forfeited is an adequate and independent ground to deny the claims. *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000). Ohio's *res judicata* rule serves a legitimate interest in finality and promotes the resolution of claims at the earliest possible opportunity. *See Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). Finally, Hoffner makes no sufficient showing of cause and prejudice to excuse his failure to comply with Ohio's procedural rule. Regarding cause, Hoffner simply complains that his appellate counsel was ineffective. But as described below, these defaulted ineffective assistance of trial counsel claims lacked weight, and appellate counsel could appropriately disregard them. Regarding prejudice, Hoffner fails to show that the failure to raise the claims precluded any valid argument.

Even assuming no procedural bar, Hoffner's claims fail on their merits. Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Wickline v. Mitchell*, 319 F.3d 813 (6th Cir. 2003), the Sixth Circuit summarized the *Strickland* standard of review for determining whether a defendant's counsel was constitutionally ineffective:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." To demonstrate that counsel's performance was deficient, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." To establish prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 819.

Case No. 3:05-cv-00687
Gwin, J.

**a. Principal Offender Claim**

With regard to his first sub-claim of ineffective assistance of counsel, Hoffner's trial counsel's performance did not fall below an objective level of reasonableness. Trial counsel's decision not to argue that Dixon, not Hoffner, acted as the principal offender did not fall below an objective standard of reasonableness because ample evidence showed that Hoffner and Dixon fully collaborated in burying Hammer alive. Hammer died of asphyxia from being buried alive. [Trial Volume 9, p. 1304.] Hoffner's confession shows that he took an active role in the activities leading up to and during the actual burial murder. As examples, Hoffner discussed killing Hammer with Dixon ahead of time, and Hoffner held Hammer in a head lock (trying to cut off his circulation) while Dixon beat Hammer at Wilkerson's home. At the grave site, Hoffner escorted Hammer to the grave, helped to place Hammer in the dug-out grave, and after Hammer yelled out, held him in place with his foot over his mouth as Dixon filled the dug-out grave with dirt. [Appendix Volume 10, p. 88-95.]

With such overwhelming evidence showing Hoffner's active involvement in the murder, trial counsel acted reasonably in deciding not to contest the principle offender issue. Moreover, trial counsel may have made the strategic decision not to contest the "principal offender" or whether he acted with "prior calculation and design," when either was sufficient to support the capital specification and when strong evidence, including Hoffner's own confession, showed prior calculation and design. O.R.C. § 2929.04(A)(7). The Court does not find that trial counsel's failure to make the "principal offender" argument falls "outside the wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690.

Assuming arguendo that Hoffner had some valid argument that Dixon was the principal

-22-

Case No. 3:05-cv-00687
Gwin, J.

offender, Hoffner still cannot demonstrate prejudice.  As mentioned above, in Ohio, a jury and trial court may impose the death penalty when the defendant acted as the "principal offender" in the murder or when the defendant acted with "prior calculation and design" in regard to the murder.  O.R.C. § 2929.04(A)(7).  Even if Hoffner was not the "principal offender," there was ample evidence, particularly from friends Elting's and Wilkerson's testimony and Hoffner's confession, showing that he acted with "prior calculation and design" in the murder.  [Trial Vol. 8, p. 1093-95, 1235-36, 1246; Trial Vol. 9 at 1253; Appendix Vol. 10, p. 88, 90-91.]  The Petitioner does not suggest otherwise; Hoffner does not argue ineffectiveness for failing to challenge the prior calculation and design aspect of the specification.  Thus, even if Hoffner had been successful in arguing that Dixon acted as the principal offender in Hammer's killing, that showing would not have saved the Petitioner.  Indeed, the trial court stressed the prior calculation and design involved with Hammer's murder when it imposed Hoffner's death sentence.  [Appendix Vol. 2 at 244-254.]

**b.  Suppression Claim**

The Court next turns to Hoffner's complaint that his trial attorney failed to move to suppress Petitioner's taped confession because he claims he had requested counsel prior to the taped confession.  The Court finds this claim without merit.  The Petitioner offers only his own post-conviction affidavit saying that he had requested an attorney prior to his interrogation and that his attorneys' response "was, in effect, that the denial of my right to an attorney prior to the interrogation didn't matter."  [Appendix Vol. 6 at 108-9.]  The Petitioner points to no other evidence to support this sub-claim.

In contrast to Hoffner's affidavit, Hoffner's taped confession and written statement show that the police advised Petitioner of his *Miranda* rights, and Hoffner voluntarily waived those rights.

-23-

Case No. 3:05-cv-00687
Gwin, J.

[Appendix Vol. 10 at 59-60, 86, 181-82.]  Further, at the suppression hearing, in response to questioning as to whether Hoffner requested an attorney, Detectives Leiter and Kulakoski both testified that Hoffner never requested to speak to an attorney prior to or during his confession.  [April 13, 1994, Tr. Vol. 2, p. 71-72; April 28, 1994, Tr. Vol. 2, p. 45, 58; June 29, 1994, Tr. Vol. 2 at 8-9.]

Even if Hoffner had told his attorney that he had requested counsel, his attorney was not ineffective in not pursuing this argument.  Counsel's decision not to more vigorously pursue this particular Fifth Amendment argument cannot be deemed deficient when all of the evidence available, except for Hoffner's self-serving affidavit, refuted it.

Therefore, this claim fails on its merits.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; FED. R. APP. P. 22(b).

**C. Third Ground for Relief**: **Ineffective Assistance of Counsel: Penalty Phase.**

In his third claim for relief, Hoffner argues that trial counsel was ineffective during the penalty phase of the trial because he 1) did not object to the court's alleged incomplete definition of "preponderance" in response to a jury question, 2) advised Hoffner to show no emotion throughout the proceedings, including when he provided his unsworn statement to the jury, and 3) ceased functioning as the Petitioner's advocate during closing arguments.[8/]  [Docs. 29 at 15-17, 50 at 33-48.]

---

[8/] With his original petition, Hoffner also claims that trial counsel was ineffective for generally dehumanizing Hoffner to the jury by limiting his exposure to the jury.  [Doc. 29 at 16-17.]  Hoffner specifically references how counsel instructed Hoffner not to attend the jury viewing of the crime scene and waived Hoffner's presence during the trial court's response to two jury questions, one regarding the definition of "preponderance" and one regarding the capital specifications.  [Doc. 29 at 16-17.]  Hoffner explicitly withdrew his argument regarding his presence at the jury view

(continued...)

Case No. 3:05-cv-00687
Gwin, J.

**a. Preponderance Instruction**

In the first sub-claim, Hoffner complained that his trial counsel agreed to a jury instruction on "preponderance" that failed to sufficiently inform the jury that Ohio carried the ultimate burden of proving that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt.  Hoffner failed to make this assignment of error in his direct appeal.  Instead, he first raised it in his Ohio post-conviction petition.  Reviewing this claim, the Ohio Sixth District Court of Appeals dismissed the claim, finding that the procedural rule of *res judicata* stopped consideration of the claim.  *State v. Hoffner*, 2002 WL 31162813, at *5 (Ohio Ct. App., Lucas County, Sept. 30, 2002).

Hoffner argues that the sub-claim regarding trial counsel's failure to object to the court's definition of "preponderance" is not procedurally defaulted because the claim required evidence outside of the trial court record.  Petitioner Hoffner seems to argue that he needed an affidavit from a juror to support his claim that his trial counsel should have objected to the instruction on the preponderance of the evidence.  The juror's affidavit states that "some of the other jurors may have been confused about the standard of proof required during the mitigation phase."  [Appx. Vol. 6 at 91.]  The Petitioner then argues that the Ohio evidentiary rule that stopped the admission of juror testimony regarding "deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict" is unconstitutional.

---

8/(...continued)
in his traverse.  [Doc. 50 at 34.]

As to the latter two arguments, Hoffner makes no argument with regard to the merits of these claims beyond what is described above.  In fact, Hoffner makes no mention at all of the merits of these claims in his traverse.  [Doc. 50 at 33-48.]  Even assuming that these two claims are not procedurally defaulted, the Court cannot find that Hoffner has met his burden of showing a reasonable probability that, but for this alleged error, the outcome of the case would have been different.  Because Hoffner fails to make this prejudice showing, his ineffective assistance of counsel claims based on trial counsel's waiver of Hoffner's presence during the trial court's response to two jury questions fail.

Case No. 3:05-cv-00687
Gwin, J.

Ohio Rule of Evidence 606(B).

Both of these arguments fail.  No outside evidence was needed to bring this claim on direct appeal.  Appellate counsel for the direct appeal could obviously challenge the trial court's instruction on the burden of proof for mitigation evidence and could challenge the failure of the trial attorney to object to the instruction.   No juror affidavit was needed to support the claim.  The claim should have been brought on direct appeal, and because it was not, Ohio could procedurally bar the claim.

The Court also finds that Ohio could constitutionally apply Ohio Rule of Evidence 606(B) here to stop consideration of a juror's affidavit describing the mental processes of other jurors.  Finally, even if the affidavit could be considered, it provides insufficient evidence to establish prejudice: the affidavit was not based upon personal knowledge[9] and was mere conjecture.[10]

The two remaining sub-claims are properly saved for federal review.

**b.  Lack of Emotion**

---

[9]For independent reasons, the affidavit was not admissible.  Ohio Evidence Rule 602 provides: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Hoffner makes no showing how one juror could have knowledge of another juror's thought processes.

[10] Someone besides the juror created the affidavit initially to read:

> Also during deliberations, I and the other jurors were confused about the standard of proof required during the mitigation phase.  We felt that the prosecution had to prove only that the aggravating factors outweighed the mitigating factors by a preponderance of the evidence, not beyond a reasonable doubt. It was according to the preponderance of the evidence standard, and not the beyond the reasonable doubt standard, as to how my own vote to recommend the death penalty was based.

[Appx. Vol. 6 at 91.]  Because the juror found the above language incorrect, she edited this language to read:

> Also during deliberations, *some of the other* jurors *may have been* confused about the standard of proof required during the mitigation phase.

*Id.* (emphasis added).  She crossed out the remainder of the language in the paragraph.

Case No. 3:05-cv-00687
Gwin, J.

As to Hoffner's claim that trial counsel was ineffective for instructing Hoffner to express no emotion throughout the proceedings and particularly when he provided his unsworn statement to the jury, Hoffner presented his own affidavit, an expert's affidavit and the affidavit of a juror to support his argument.  [Appx. Vol. 6 at 91, 110, 124-25.]  In the last reasoned opinion by a state court addressing Hoffner's argument, the Sixth District Court of Appeals reviewed this evidence and ruled:

> Given that appellant's affidavit was self-serving and that the expert's affidavit was based on the self-serving affidavit, we cannot say that the trial court abused its discretion in discounting their credibility or in finding that, even taken as a whole, they did not present sufficient operative facts to show counsel's ineffectiveness and the required prejudice.  *See Calhoun*, 86 Ohio St.3d at 284, 714 N.E.2d 905.

> {¶ 27} Appellant also relies on the affidavit of a juror to support his claims that his counseled lack of emotion had a prejudicial effect on him. Generally, jurors are not competent to testify about their deliberations or their mental processes during deliberations without first establishing this evidence from an outside (nonjury) source. Evid.R. 606(B), Ohio's aliunde rule, provides:

> {¶ 28} "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's

> {¶ 29} attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes."

> {¶ 30} Courts have held that this rule applies to juror testimony in postconviction proceedings where the defendant alleges ineffective assistance of counsel. *See State v. Hessler*, 10th Dist. No. 01AP-1011, 2002 Ohio 3321 at ¶¶ 40-41; *State v. Fears*

-27-

Case No. 3:05-cv-00687
Gwin, J.

> (Nov. 12, 1999), Hamilton App. No. C-990050, appeal dismissed (2000), 88 Ohio
> St.3d 1444, 725 N.E.2d 284. Given that the purpose of the rule is to "maintain the
> sanctity of the jury room," "ensure the finality of jury verdicts," and "protect jurors
> from being harassed by defeated parties," see *State v. Hessler* (2000), 90 Ohio St.3d
> 108, 123, 734 N.E.2d 1237, certiorari denied (2000), 532 U.S. 998, 121 S.Ct. 1662,
> 149 L.Ed.2d 643, we, too, hold that a juror affidavit should not be allowed for the
> purposes for which it is offered in this case. For this reason, we find the juror was not
> competent to testify as to her mental processes during the trial.  We therefore find
> that the trial court did not err in denying a hearing and dismissing the petition as to
> appellant's . . . claims of ineffective assistance of counsel.

*State v. Hoffner*, 2002 WL 31162813, at *4-5 (Ohio Ct. App., Lucas County, Sept. 30, 2002).  Given

the weakness of the juror affidavit (in which the juror indicated that the "lack of emotion" was a

factor, but not a significant factor in her death penalty vote) as well as the inadmissibility of the

affidavit as described above, the Court does not find that the state court acted contrary to or

unreasonably applied federal law in holding that Hoffner failed to satisfy the prejudice showing

required under *Strickland*.  *See Tanner v. United States*, 483 U.S. 107, 117-27 (1987) (explaining

the policy reasons and legislative history of the federal rule rendering this type of juror testimony

inadmissible); *see also United States v. Blackwell*, 459 F.3d 739, 769 (6th Cir. 2006).

**c. Mitigation Phase Closing Argument**

Petitioner Hoffner also claims that his trial counsel rendered ineffective assistance of counsel

with regard to some of counsel's comments in final argument.  In the last reasoned opinion by a state

court addressing Hoffner's argument that trial counsel ceased functioning as his advocate during

closing argument, *see* [Trial Transcript Vol. 8 at 1974-75],  the Ohio Supreme Court described the

comments and ruled:

> Hoffner asserts that defense counsel were deficient during closing argument in the
> mitigation phase of the trial.  Specifically, Hoffner claims that counsel were deficient

Case No. 3:05-cv-00687
Gwin, J.

in making the following comments:

{¶ 49} "This is a heinous crime, it's unbelievable. * * *

{¶ 50} "Please don't mistake any of my remarks as an attempt to evoke sympathy on behalf of Timothy L. Hoffner, because I don't feel any, not a bit. I feel revulsion and confusion in equal parts because of everything that we have heard * * * . . . .

{¶ 52} "To stand before you and ask for 20 full years to the parole board is an abomination and it's an insult to you, to me and to the Hammers."

{¶ 53} In this case, we determine that defense counsel's comments do not reflect deficient performance and that they were not prejudicial. Rather than an abandonment of Hoffner's mitigation defense, counsel's comments were an apparent attempt to acknowledge the particularly gruesome nature of the crime and to preserve credibility between counsel and the jury. *See, e.g.*, *State v. Hartman* (2001), 93 Ohio St. 3d 274, 295-96, 754 N.E.2d 1150; *State v. Campbell*, 90 Ohio St.3d at 337, 738 N.E.2d 1178. Judicial scrutiny of counsel's performance must be highly deferential, and reviewing courts should refrain from second-guessing the strategic decisions of trial counsel. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 54} Furthermore, Hoffner misconstrues defense counsel's final comment. In making this statement, counsel merely informed the jury that their mitigation strategy was to seek a life sentence for Hoffner with the possibility of parole after 30 years, instead of parole after 20 years. Counsel apparently believed that any attempt to seek the lesser sentence of life with the possibility of parole after 20 years would have alienated the jury. This tactic was not unreasonable in light of the particularly heinous nature of the aggravated murder committed here.

*State v. Hoffner*, 811 N.E.2d 48, 57-58 (Ohio 2004).

The Court cannot say that the Ohio Supreme Court acted contrary to or unreasonably applied federal law in denying the ineffective assistance of counsel claim presented here. *See Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) ("[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. . . . Judicial review of a defense attorney's summation is therefore highly deferential--and doubly deferential when it is

Case No. 3:05-cv-00687
Gwin, J.

conducted through the lens of federal habeas.")  Having found the Ohio Supreme Court's opinion

on this claim is not objectively unreasonable, the Court denies Hoffner's requested writ of habeas

corpus for this claim.  *Id.* at 5. ("Where, as here, the state court's application of governing federal law

is challenged, it must be shown to be not only erroneous, but objectively unreasonable." (citing

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).  Here, Hoffner's trial counsel had strategic reasons not

to minimize the nature of Hoffner's conduct in the murder.  The Ohio Supreme Court was

objectively reasonable when it found that counsel's performance did not fall below an objective

standard of reasonableness that prejudiced the defendant and resulted in an unreliable or

fundamentally unfair outcome in the proceeding.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a

constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; FED. R.

APP. P. 22(b).

**D. Fourth Ground for Relief: Ineffective Assistance of Appellate Counsel: Direct Appeal**

In his fourth claim for relief, Petitioner Hoffner presents an ineffective assistance of appellate

counsel claim.  [Doc. 29-1 at 18-21.]  He says that appellate counsel was ineffective by failing to

raise the following four arguments on appeal: (1) that the trial court unconstitutionally failed to

define "aggravating factor" to the jury prior to its penalty phase deliberations; (2) that the prosecutor

made serious misstatements of law during closing argument; (3) that the trial court gave the jury

improper unanimity instructions during the penalty phase; and (4) that the trial court also improperly

instructed the jury with an acquittal first instruction.  *Id.*  Hoffner also claims that appellate counsel

was ineffective for failing to assign trial counsel's failure to object to these errors as grounds for

Case No. 3:05-cv-00687
Gwin, J.

appeal.

On January 26, 2006, the Petitioner moved the Court to hold the case in abeyance until he

exhausted his fourth claim for relief with a *Murnahan* application in state court.  [Doc. 31-1.]  On

August 24, 2006, the Ohio Court of Appeals denied Hoffner's application as untimely under Rule

26(B) of the Ohio Rules of Appellate Procedure and on the merits.  [Doc. 52-2: *State of Ohio v.*

*Hoffner*, Lucas County Court of Appeals No. L-95-181.]  In denying the *Murnahan* application, the

Court of Appeals found the application untimely under Rule 26(B)'s ninety day time limit:

> In the instant case, appellant is attempting to reopen the March 23, 2001 direct
> appellate judgment.  He did not file his application for reopening until June 6, 2006,
> more than five years after the appellate judgment.  The application is untimely on its
> face. *Id*. at 2.

Second, the Court of Appeals found that Hoffner failed to establish good cause to excuse his

untimely filing.  *Id*. at 2-3.  Finally, the Court of Appeals analyzed and denied Hoffner's claim of

ineffective assistance of appellate counsel on the merits.  *Id.* at 5-15.

On February 14, 2007, the Supreme Court of Ohio affirmed the Court of Appeals' denial.

[Doc. 58-2: *Ohio v. Hoffner*, 112 Ohio St.3d 467 (2007).]  The Supreme Court rejected Hoffner's

arguments for good cause to excuse his untimely filing.  *Id.* at 2.  The Ohio Supreme Court did not

consider the merits of Hoffner's ineffective assistance of appellate counsel claims.

After Hoffner completed the *Murnahan* process, the parties submitted updated briefs on

Hoffner's fourth claim before this Court.  [Docs. 68, 69, 73.]

**1.  Procedural Default**

The  Ohio Sixth District Court of Appeals and the Supreme Court of Ohio both found that

Hoffner's  claim  was  procedurally  stopped  under  Rule  26(B)  of  the  Ohio  Rules  of  Appellate

Case No. 3:05-cv-00687
Gwin, J.

Procedure.  *See* [Doc. 52-2 at 2-3: *State of Ohio v. Hoffner*, Lucas County Court of Appeals No. L-95-181.]; [Doc. 58-2 at 2: *Ohio v. Hoffner*, 112 Ohio St.3d 467 (2007).].  Both courts found Hoffner's application untimely on its face, and both rejected his efforts to establish good cause to overcome his untimely filing.

The Court will now consider whether the state procedural default rule is an adequate reason to justify the denial of federal review.  As described above, under the third prong of the *Maupin* test, the Court must determine whether the state procedural bar, Rule 26(B) in this case, represents an "adequate and independent" ground on which the state court can foreclose federal review.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  The state rule must be "firmly established and regularly followed" to be found "adequate and independent."  *James v. Kentucky*, 466 U.S. 341, 348 (1984).

Recently, the Sixth Circuit has been in conflict as to whether Rule 26(B) is an "adequate and independent" state ground sufficient to foreclose federal review of claims.  In *Franklin v. Anderson*, 434 F.3d 412, 420-21 (6th Cir. 2006), the Sixth Circuit found that the "Ohio Supreme Court has been erratic in its handling of untimely Rule 26(B) applications in capital cases."  *Id.* at 420-21  (drawing particular attention to cases where the Ohio Supreme Court failed to follow the timeliness rule from 2000-2004, but then began applying the rule again in 2004).  Therefore, the Sixth Circuit said that because of the Ohio Supreme Court's "fluctuating treatment" of Rule 26(B), the rule "is not an adequate and independent state rule that can preclude consideration of Franklin's ineffective assistance of appellate counsel claim."  *Id.* at 421.  *See also Wilson v. Mitchell*, 498 F.3d 491, 512 (6th Cir. 2007) (affirming *Franklin*).  However, in 2008, the Sixth Circuit revisited the question and found that the "'firmly established and regularly followed' inquiry cannot be made once and for all."  *See Fautenberry v. Mitchell*, 515 F.3d 614, 641-42 (6th Cir. 2008) (finding that "as of the time that

-32-

Case No. 3:05-cv-00687
Gwin, J.

Fautenberry should have filed his application for reopening (i.e., when he acquired new counsel in January 1996), the time constraints in Ohio App. R. 26(B) were firmly established and regularly followed, and he was or should have been apprised of the rule's existence").

Under *Franklin* and *Fautenberry*, this Court finds that Rule 26(B) was firmly established and regularly followed at the time Hoffner acquired appointed habeas counsel in March 2005 and then filed his untimely 26(B) motion in 2006. *Franklin*, a 2006 decision, stated that beginning in 2004, "the Ohio Supreme Court has renewed affirming the dismissal of Rule 26(B) applications in capital cases as untimely." *Franklin*, 434 F.3d at 420-21. This language governs the time period in question and suggests that Hoffner acquired appointed counsel and filed his application at a time when the rule was firmly established and regularly followed. Thus, Rule 26(B) is an adequate and independent ground sufficient to foreclose federal review.

Finally, Hoffner does not make a sufficient showing of cause and prejudice to excuse his failure to comply with Ohio's procedural rule. He cannot show prejudice for the same reasons the Court describes below in its analysis of why the sub-claims fail on the merits.

Even assuming Rule 26(B) inadequate and therefore unable to foreclose federal review, the Court finds that Hoffner's fourth claim fails on its merits.

**2. Merits**

In applying the AEDPA standard described above, the Court looks to "the last state-court decision on the merits, which in this case is the decision of the Ohio Court of Appeals." *Garcia v. Andrews*, 488 F.3d 370, 374 (6th Cir. 2007).

Here, the Ohio Court of Appeals denied each of the Petitioner's four sub-claims on the

Case No. 3:05-cv-00687
Gwin, J.

merits.  [Doc. 52-2: *State of Ohio v. Hoffner*, Lucas County Court of Appeals No. L-95-181.]  The

Court finds that the Ohio Court of Appeals correctly identified *Strickland* as the governing standard

for this claim: "The two-pronged analysis found in *Strickland v. Washington* . . . is the appropriate

standard to determine whether a defendant has received ineffective assistance of appellate counsel."

*Id.* at 4.  While the Court of Appeals goes on to articulate the *Strickland* standard, this Court notes

with concern the failure of the Court of Appeals to return to the *Strickland* standard in its opinion

and apply the two prongs of *Strickland* with regard to each particular sub-claim.  However, this

Court recognizes that this critique is more of form than of substance; for this Court ultimately

arrives in the same place as the Court of Appeals does.  The Court now addresses the sub-claims

below; it considers the third and fourth sub-claims together.

**a.  Trial Court's Failure to Define "Aggravating Factors"**

Petitioner first argues that he was denied effective assistance of appellate counsel because

his "appellate counsel never assigned as error the trial court's inexplicable failure to instruct the jury

as to what it could consider as an 'aggravating' factor in determining Hoffner's sentence" before the

jury's penalty phase deliberations.  [Doc. 68 at 8.  *See also* Docs. 29-1 at 15-16, 50 at 51-52.]

Hoffner says that this failure left the jury with "untrammeled discretion" in violation of *Gregg v.

Georgia*, 428 U.S. 153, 195 at fn. 47 (1976).

The Respondent argues that the Ohio Supreme Court has rejected a similar argument in *State

v. Hutton*, 100 Ohio St. 3d 176 (2003).  In that case, the petitioner argued that appellate counsel

failed to appeal the trial court's failure to define aggravating circumstances before the penalty phase

jury deliberations.  The Ohio Supreme Court found that the plain error standard applied on appeal

because there had been no contemporaneous objection and concluded: "Because the issue had been

Case No. 3:05-cv-00687
Gwin, J.

waived at trial, appellate counsel could reasonably decide not to try to raise it in the court of appeals." *Hutton*, 100 Ohio St. 3d at 185 (citing *Jones v. Barnes*, 463 U.S. 745 (1983), holding that counsel need not raise every possible issue on appeal to provide effective assistance of counsel, and *Smith v. Robbins*, 528 U.S. 259, 288 (2000), quoting another court stating "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").  Citing *Payne v. Bell*, 418 F.3d 644, 653 (6th Cir. 2005), the Respondent also claims that the appellate re-weighing of the aggravating and mitigating factors in the case cured any vagueness concerning the meaning of aggravating circumstances at the trial court level.

The Ohio Court of Appeals denied the Petitioner's first sub-claim alleging ineffective assistance of appellate counsel as follows:

> In *State v. Hutton*, . . . the appellant made the exact same argument relative to the trial court's failure to define "aggravating circumstances" for the jury.  However, because defense counsel had not objected to the instructions at trial, the court found that any error was waived.  Having been waived, the error could not serve as a basis for reversal unless it met the strict standard for plain error.  Further, because the issue had been waived at trial, direct appellate counsel could reasonably decide not to try to raise it in the court of appeals.  Generally, only when ignored issues are clearly stronger than those presented on direct appeal, will the presumption of effective assistance of counsel be overcome.  The original appeal consisted of 15 assignments of error, including jury instruction and ineffective assistance of trial counsel issues.  The Supreme Court of Ohio concluded that the failure to raise the waived instructional issue was not deficient performance constituting ineffective assistance. . . .
>
> Similar to *Hutton*, the trial court in the present case neglected to inform the jury that the term "aggravating circumstances" meant the specifications of which appellant had been found guilty in the guilt phase.  However, also similar to *Hutton*, we conclude that the failure to raise the waived instructional issue was not deficient performance constituting ineffective assistance.  In the direct appeal, counsel set forth 14 assignments of error, including jury instruction and ineffective assistance of trial counsel issues.

*See* [Doc. 52-2 at 5-6.] (citations omitted).

-35-

Case No. 3:05-cv-00687
Gwin, J.

This Court does not find that the Ohio Court of Appeals acted contrary to or unreasonably applied Supreme Court precedent, particularly *Jones* and *Smith*, here.  Hoffner has not proven that this claim, facing the stringent plain error standard of review,[11]/ is clearly stronger than those appellate counsel brought on appeal.  *See* [State v. Hoffner, 2001 WL 279768, at \*4-6 (Ohio Ct. App., Lucas County, Mar. 23, 2001)](listing and analyzing the fourteen assignments of error appellate counsel brought on appeal).  As a result, he does not show that appellate counsel was deficient in failing to raise this claim.  Moreover, even assuming error by the trial court judge, deficient performance by trial counsel for failing to object, and deficient performance by appellate counsel for failing to raise this claim on appeal, Hoffner does not show that there is a reasonable probability that but for this error, the jury and trial judge would not have sentenced him to death.[12]/

Further, appellate review and reweighing of the aggravating and mitigating factors cured any alleged error in this case.  *See* [Slagle v. Badley, 457 F.3d 501, 521 (6th Cir. 2006)]("[T]he Federal

_____

[11]/ To survive plain error review in Ohio, one must show that "but for the error, the outcome of the trial would clearly have been otherwise."  *See, e.g.,* [State v. Wogenstahl, 662 N.E.2d 311, 322 (Ohio 1996)].  *See also* [United States v. Olano, 507 U.S. 725, 731-34 (1993)] ("There must be an  error  that is  plain and that  affect[s] substantial rights. . . . [T]he court should not exercise that discretion unless the error  seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  Moreover, the error affects one's substantial rights if it "affected the outcome of the district court proceedings.")

[12]/ The Court also notes that both Hoffner's trial counsel and the prosecutor, in their opening statements in the penalty phase, clarified the meaning of "aggravating circumstance" for the jury.  Hoffner's trial counsel said:

> In the mitigating phase or the penalty phase you will be required to determine whether the State has proven beyond a reasonable doubt that the aggravating factors outweigh the mitigating circumstances, and the Judge will tell you later that the aggravating factors in this case are indeed the specifications that you found attached to the first three counts . . . ."

[Trial Transcript, Volume 10, p. 1506-7.] The prosecutor confirmed, "[I]t was correct when he indicated to you that the aggravating circumstances are the two specifications that you found . . ." *Id.* at 1510.  *See also* [Trial Transcript, Volume 11 at 2000.]

While counsels' statements do not completely cure the trial judge's omission, they suggest that the jury likely understood the meaning of aggravating circumstances.  The Court also notes that unlike the jury's request for clarification on the meaning of "preponderance," the jury did not ask for clarification regarding the meaning of aggravating circumstances.  [Trial Transcript, Volume  11 at 2014.]

Case No. 3:05-cv-00687
Gwin, J.

Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review.") (quoting *Clemons v. Mississippi*, 494 U.S. 738, 741 (1990)).  *See State v. Hoffner*, 811 N.E.2d 48, 65-66 (Ohio 2004) (Ohio Supreme Court's independent review and reweighing of the aggravating and mitigating factors); *State v. Hoffner*, 2001 WL 279768, *16-17 (Ohio Ct. App., Lucas County, Mar. 23, 2001) (same by the Ohio Court of Appeals).

Given the above, the Court denies Petitioner's first sub-claim.[13]

**b. Prosecutor's Closing Argument**

Hoffner next alleges that the prosecutor made the following improper comment during closing argument in the penalty phase and that his appellate counsel was ineffective for failing to raise this on direct appeal:

> Archie Dixon went through Chris' wallet and later both Mr. Hoffner and Mr. Dixon took and sold Chris' car. I don't think there's any question there's an aggravating circumstance, underline maybe more than one here.
>
> Is there anything mitigating about the nature and circumstance of this crime? . . .
>
> Is there anything mitigating, ladies and gentlemen, about trying to snap someone's neck, trying to snap his neck, leaving, digging a hole, coming back, walking him to the car, driving him there with other people, walking him down a path and taking him to his grave, is there anything mitigating about that? . . .
>
> Who benefited in this murder? I think the evidence is clear that Mr. Hoffner and Mr. Dixon sold Chris Hammer's car. He bought at least one car, and there are a couple

---

[13] As to appellate counsel's failure to appeal based on the alleged ineffectiveness of trial counsel for failing to object, even assuming deficient performance by trial counsel for failing to object to the trial judge's alleged failure to adequately define aggravating circumstances, the Petitioner does not meet the prejudice prong because he fails to meet his burden of showing a reasonable probability that, absent the above error, the jury would not have sentenced Hoffner to death.  Thus, the Court finds that appellate counsel was not ineffective in failing to raise an ineffective assistance of trial counsel claim because that claim would have failed to meet the prejudice standard.

Case No. 3:05-cv-00687
Gwin, J.

> of exhibits, State's Exhibit's, after the taking and selling of Chris Hammer's car, and
> then he initially lied to the police and blamed everything on Archie Dixon. <u>Is there
> anything mitigating about the nature and circumstances of this crime, a planned,
> premeditated, calculated killing</u>?

[Doc. <u>29 at 19</u>, <u>50 at 53.</u>] (emphasis in Hoffner's briefs) (quoting Trial Transcript, Volume 11 at 2000-2.).  Hoffner argues that "Ohio law makes clear that the jury may consider the nature and circumstances of a crime only as a mitigating factor."  [Doc. <u>68 at 8.</u>]  (citing <u>*Ohio v. Wogenstahl*, 662 N.E.2d 311, 322 (Ohio 1996)</u> and <u>*State v. Williams*, 794 N.E.2d 27, 49-54 (Ohio 2003)</u>).  He alleges that "the prosecutor's improper argument may very well have led the jury to attach the 'aggravating' label to a factor otherwise limited to mitigation," and that this violated Hoffner's right to due process.  [Doc. <u>68 at 8.</u>]  (citing <u>*Zant v. Stephens*, 462 U.S. 862, 878 (1983)</u>).

The Respondent denies that the prosecutor's remarks were improper and claims that to the extent any statements were improper, they do not rise to the level of plain error, the applicable standard due to trial counsel's failure to object.  [Docs. <u>45 at 93-94</u>, <u>69 at 25-26.</u>]

The Ohio Court of Appeals found that the prosecutor's statements did not meet the standard for either prosecutorial misconduct or plain error, and therefore, appellate counsel was not deficient for failing to raise this issue on appeal.  [Doc. <u>52-2 at 7-11.</u>]  This Court finds that the appellate court did not act contrary to or unreasonably apply Supreme Court precedent.

The Court begins with the first statement at issue:

> Archie Dixon went through Chris' wallet and later both Mr. Hoffner and Mr.
> Dixon took and sold Chris' car. I don't think there's any question there's an
> aggravating circumstance, <u>maybe more than one here</u>.

[Doc. <u>29 at 19</u>, <u>50 at 53.</u>] (emphasis placed by Hoffner).

Case No. 3:05-cv-00687
Gwin, J.

"[I]n the penalty phase of a capital trial, the "aggravating circumstances" against which the mitigating evidence is to be weighed are limited to the specifications of aggravating circumstances set forth in R.C. 2929.04(A)(1) through (8) that have been alleged in the indictment and proved beyond a reasonable doubt." *Wogenstahl*, 662 N.E.2d at 322. Here, the state's high court on this state law question said that "in the present case, the facts referred to by the prosecutor relate to the aggravating circumstance of [the Petitioner] committing aggravated murder while committing aggravated robbery" and are therefore proper.  [Doc. 52-2 at 9.]  However, the Ohio Supreme Court does acknowledge the "technical[]" impropriety of the "more than one" reference.  *Id.*

Even assuming this language improper for wrongly referring to the nature and circumstances of the crime as aggravating circumstances and referring to "maybe more than one here," because trial counsel did not object, the Petitioner waived all but plain error review of this first statement.  *See State v. Braden*, 98 Ohio St.3d 354, 368 (Ohio 2003).  The Court cannot find that Hoffner meets the plain error standard here because this alleged error did not affect the outcome of Hoffner's sentencing.  *Id.* at 369 ("Although error, we find that the prosecutor's brief remarks do not rise to the level of outcome-determinative plain error.").  Thus, appellate counsel was not deficient for failing to make this claim on appeal.

The Court next turns to the remaining statements at issue:

Is there anything mitigating about the nature and circumstance of this crime? . . .

Is there anything mitigating, ladies and gentlemen, about trying to snap someone's neck, trying to snap his neck, leaving, digging a hole, coming back, walking him to the car, driving him there with other people, walking him down a path and taking him to his grave, is there anything mitigating about that? . . .

Who benefited in this murder? I think the evidence is clear that Mr. Hoffner and Mr. Dixon sold Chris Hammer's car. He bought at least one car, and there are a couple

-39-

Case No. 3:05-cv-00687
Gwin, J.

> of exhibits, State's Exhibit's, after the taking and selling of Chris Hammer's car, and then he initially lied to the police and blamed everything on ArchieDixon. <u>Is there anything mitigating about the nature and circumstances of this crime, a planned, premeditated,  calculated killing</u>?

[Doc. 29 at 19, 50 at 53.] (emphasis added by Hoffner).

In a recent Ohio Supreme Court case, that court addressed similar statements made by a

prosecutor:

> {¶ 325} Third, Davis contends that the prosecutor misbehaved by arguing the absence of mitigating factors the defense never raised. Davis argues that the prosecutor improperly argued that the nature and circumstances of the offense were aggravating when the defense never requested the jury to consider them as mitigating. During his penalty-phase argument, the prosecutor asked, "Is there anything mitigating about the nature and circumstance of the offense[?]" The prosecutor then reviewed key facts in the case and stated, "I defy any one of you to come up with anything mitigating in the circumstances and nature of this offense."

> {¶ 326} "Although * * * prosecutors cannot argue that the nature and circumstances of the offense of an offense are aggravating circumstances, the facts and circumstances of the offense must be examined to determine whether they are mitigating. R.C. 2929.04(B). Thus, a prosecutor may legitimately refer to the nature and circumstances of the offense, both to refute any suggestion that they are mitigating and to explain why the specified aggravating circumstance[s] outweigh mitigating factors." *State v. Sheppard* (1998), 84 Ohio St.3d 230, 238, 703 N.E.2d 286. Accordingly, the prosecutor's argument was not improper and did not result in plain error.

*State v. Davis*, 880 N.E.2d 31, 77 (Ohio 2008).  With this Ohio Supreme Court ruling in mind, the

Court cannot find that the prosecutor committed error here.[14/]  Furthermore, even if the Court could

find error, the claim is subject to plain error review due to the lack of objection.  Again, the Court

---

[14/] Therefore, the Petitioner's claim that appellate counsel was  ineffective for failing to make an ineffective assistance of trial counsel claim based on trial counsel's failure to object to the prosecutor's statement here also fails because of the lack of error.

To the extent there was minor error in the statement previously reviewed (including the "maybe more than one" reference), Hoffner is still unable to show that appellate counsel was ineffective for failing to appeal based on trial counsel's failure to object.  Even if there were such error and even if trial counsel was deficient in not objecting to the error, Hoffner does not show prejudice–that is, a reasonable probability, that but for the minor error, the outcome of the proceeding would have been different.

Case No. 3:05-cv-00687
Gwin, J.

cannot conclude that these statements affected the outcome of the case in light of the substantial

evidence supporting Petitioner's conviction and sentence.  Because the Court does not find error,

let alone plain error here, appellate counsel was not deficient in failing to make this argument on

appeal.

Moreover, appellate review and proper re-weighing of the aggravating and mitigating factors

cured any alleged error as to any consideration of improper aggravating circumstances in this case.

*See* *Brown v. Sanders*, 546 US 212, 217 (2006) ("[T]he sentencer's consideration of an invalid

eligibility factor . . . required reversal of the sentence . . . <u>unless a state appellate court determined</u>

<u>the error was harmless or reweighed the mitigating evidence against the valid aggravating factors.</u>")

(emphasis added)).  *See also* *State v. Hoffner*, 811 N.E.2d 48, 65-66 (Ohio 2004) (Ohio Supreme

Court's independent review and reweighing of the aggravating and mitigating factors); *State v.*

*Hoffner*, 2001 WL 279768, *16-17 (Ohio Ct. App., Lucas County, Mar. 23, 2001) (same by the Ohio

Court of Appeals).

In consideration of the above, the Court does not find that the Ohio Court of Appeals acted

contrary to or unreasonably applied Supreme Court precedent here.  Thus, the Court denies

Petitioner's second sub-claim.

**c.  Alleged Unanimity and Acquittal First Jury Instructions**

The Petitioner next alleges that the trial judge provided incorrect jury instructions at the

mitigation phase and appellate counsel was ineffective in failing to appeal based on this alleged

error.  [Docs. 29 at 20, 50 at 55-56.]  First, the Petitioner takes issue with the following instruction:

> If the weight of the evidence is equally balanced, or if you are unable to determine
> which side of an issue has the preponderance as to any one or more of the mitigating
> factors, then the Defendant has not established that mitigating factor or factors, as

-41-

Case No. 3:05-cv-00687
Gwin, J.

the case may be.[15/]

[Trial Vol. 8 at 2008.]  The Petitioner argues that this language, without additional clarifying

instructions, could have led the jury to believe that a single juror could not consider a mitigating

factor unless all the jurors agreed that it was present.  He argues that this violates the Supreme Court

precedent of *Mills v. Maryland*, 486 U.S. 367 (1988).

The Respondent counters that while the trial court required unanimity in the weighing

process, it "never told the jury that unanimity is necessary to establish a mitigating factor."  [Doc.

69 at 26-27.]

After reviewing the instructions as a whole, this court agrees with a fellow district court's

recent application of Sixth Circuit precedent to an argument similar to the Petitioner's here:

> A unanimity instruction that refers to the process of weighing aggravating
> circumstances against mitigating factors--as opposed to a unanimity instruction
> referring to the process of finding or considering a mitigating factor--is acceptable.
> *Coe v. Bell*, 161 F.3d at 338; *see also Williams v. Coyle*, 260 F.3d 684, 702 (6th Cir.
> 2001) (jury instruction that did not require unanimity as to the existence of a
> mitigating circumstance(s) but only required unanimity as to the question of whether
> the aggravating circumstances as a whole outweighed the mitigating circumstances
> as a whole does not violate clearly established federal law). The jury instructions
> given in petitioner's case did not require unanimity as to the presence of a mitigating
> factor.

*Nichols v. Bell*, 440 F.Supp.2d 730, 830-31 (E.D. Tenn. 2006).  *See also Williams v. Anderson*, 460

F.3d 789, 808, fn. 5 (6th Cir. 2006) ("In this Circuit, failing to expressly state that mitigating factors

need not be unanimously found does not improperly imply that mitigating factors must be

unanimously found.").  With this unfavorable precedent in mind, the Court cannot find appellate

---

[15/] The Petitioner later characterizes this instruction as one "that erroneously directed the jury to reject a
mitigation factor unless each and every juror agreed that Hoffner had proven the same by a preponderance of the
evidence."  [Doc. 68 at 8.] This is clearly an exaggerated interpretation of this text.

Case No. 3:05-cv-00687
Gwin, J.

counsel deficient for failing to raise this argument on appeal, and therefore the state court's decision

to reject this claim was not contrary to or an unreasonable application of federal law.[16/]

Second, the Petitioner argues that "the trial court instructed the jury that it could consider

the penalties other than death only after finding that the prosecution failed to prove the aggravating

factor present . . . outweighed the mitigating factors" and that appellate counsel was ineffective in

not raising this as error.  [Doc. 29 at 21[17/], 50 at 56-57., 68 at 9, 73 at 8-10.] He says that "it is not

necessary for the jury to reject the death option before considering another option." *Id.* (citing *Ohio*

*v. Thomas*, 533 N.E.2d 286 (Ohio 1988) and *State v. Brooks*, 661 N.E.2d 1030, 1040-41 (Ohio

1996)).

Here, the Court assumes the Petitioner takes issue with the following instructions[18/]:

> If after a full and impartial consideration of all the evidence in this case you are
> firmly convinced that the aggravating circumstances outweigh the mitigating factors,
> then the State has established this beyond a reasonable doubt and your sentence
> recommendation should be death.

> If you are not firmly convinced that the aggravating circumstances outweigh the
> mitigating factors, then your sentence recommendation must be life imprisonment
> with parole eligibility only after either 20 full years of imprisonment or 30 full years
> of imprisonment. . . .

> Now, in conclusion, as you shall recommend the sentence of death only if you
> unanimously, all 12 jurors, find by proof beyond a reasonable doubt that the

---

[16/] The Court further notes that because trial counsel did not object to this issue, any subsequent court would review the error only for plain error, which the Court does not find exists here.

[17/] The Court finds that Hoffner raised this claim in his original petition as cited here, and therefore, the Court rejects the Respondent's argument that Hoffner did not raise it until later and therefore, it is barred by the statute of limitations.  [Doc. 85 at 8-10.] (The Respondent represents to the Court that the addition of this statute of limitations defense is the only change between this return and her previous return; therefore, the Court cites to her previous return regarding her other arguments.)

[18/] It is noteworthy that the Petitioner does not cite to any specific language in the instructions to support his claim here.

-43-

Case No. 3:05-cv-00687
Gwin, J.

> aggravating circumstances outweigh the mitigating factors. If you do not so find, you should unanimously recommend either a life sentence with parole eligibility after serving 20 full years of imprisonment or a life sentence with parole eligibility only after serving 30 full years of imprisonment.

[Trial Vol. 8 at 2010-12.]

The Ohio Court of Appeals distinguished the Hoffner instructions from the unconstitutional "acquittal first instructions" in *Brooks*: "'You are now required to determine unanimously that the death penalty is inappropriate before you can consider a life sentence.'" *Brooks*, 661 N.E.2d at 1040.

This Court agrees with the Ohio Court of Appeals that the jury instructions here did not require the jury to unanimously reject the death penalty before considering a life sentence,[19] and thus, they did not violate Ohio or federal law.[20] *See Hartman v. Bagley*, 492 F.3d 347, 362-65 (6th Cir. 2007) (summarizing Sixth Circuit precedent with regard to alleged acquittal first instructions and upholding similar, although not identical, instruction). This court, as well as others, have upheld similar instructions in the face of similar challenges in the past. *See Madrigal v. Bagley*, 276 F.Supp.2d 744, 779-785 (N.D. Ohio 2003) (upholding nearly identical instruction)[21]. *See also State*

---

[19] Moreover, the Court notes that the trial court, in the instructions, properly emphasized the importance of the jurors' individual judgment in the deliberating process. [Trial Vol. 8 at 2011.]

[20] The Court also points out how closely the instructions at issue here mirror Ohio's statutory language:

> If the jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend [one of the applicable life sentences].

R.C. 2929.03(D)(2).

[21] The instructions at issue in *Madrigal* are nearly identical to those at issue here:

> You shall recommend the sentence of death if all 12 jurors find beyond proof-by proof beyond a

(continued...)

-44-

Case No. 3:05-cv-00687
Gwin, J.

*v. LaMar*, 767 N.E.2d 166, 199-200 (Ohio 2002) (finding no plain error); *State v. Jalowiec*, 744 N.E.2d 163, 234 (Ohio 2001) (finding no plain error).  With this case law upholding similar instructions, appellate counsel cannot be deemed ineffective for failing to raise the instructions as error.[22]  Moreover, the Ohio appellate court's rejection of this claim was not an unreasonable application of Supreme Court precedent on this issue.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; Fed. R. App. P. 22(b).

## E.  Fifth Ground for Relief: Sentencing Unfairness: Unadmitted Evidence & Improper Burden

In his fifth ground for relief, Hoffner argues that 1) the jury considered non-admitted documentation of Hoffner's disciplinary problems while incarcerated, and 2) the judge failed to ensure that the jury understood the proper burden of proof required during the mitigation phase, thereby leading to jury confusion as to the proper burden.  [Docs. 29 at 22-23, 50 at 58-61.]  The Ohio Sixth District Court of Appeals found both claims barred by *res judicata* because Hoffner could have raised them on direct appeal but did not.  *State v. Hoffner*, 2002 WL 31162813, at *5-6 (Ohio Ct. App., Lucas County, Sept. 30, 2002).  Procedural default bars review of these claims here.

---

[21]/(...continued)
reasonable doubt that the aggravating circumstances outweigh the mitigating factors. If you do not unanimously find that the aggravating circumstances outweigh the mitigating factors, you shall unanimously recommend either a life sentence with parole eligibility after 20 years of imprisonment or a life sentence with parole eligibility after serving 30 years of imprisonment.

*See Madrigal*, 276 F.Supp.2d at 779.  Therefore, the Court applies the same analysis it applied in that case to the instructions here.

[22]/ With regard to both of these instructions, again, the Petitioner's claim that appellate counsel was ineffective for failing to make an ineffective assistance of trial counsel claim based on trial counsel's failure to object also fails because of the case law suggesting no error.

Case No. 3:05-cv-00687
Gwin, J.

As to the first sub-claim, the Petitioner argues that the claim is not procedurally defaulted because it required evidence outside the record made at the trial.  Petitioner Hoffner points to alleged non-admitted documentation that the jury received and considered during deliberations [Apx. Vol. 11 at 114-153.][23/]  as well as the affidavit of a juror addressing the prejudice of the documentation. [Apx. Vol. 6 at 91.]  Dealing with this argument, the Ohio Court of Appeals found: "the prison records were, and always have been, a part of the record on appeal. They are listed in the table of contents for the mitigation handbook. Since appellant could have raised this argument on appeal, res judicata bars litigation of that argument now."  *State v. Hoffner*, 2002 WL 31162813, at 6 (Ohio Ct. App., Lucas County, Sept. 30, 2002).  This Court finds that the Ohio Court of Appeals properly relied on the *res judicata* procedural bar here because the records at issue were part of the direct appeal record.

Second, as to the juror affidavit, the Petitioner suggests that the application of Ohio Rule of Evidence 606(B) to render the affidavit inadmissible is unconstitutional.  With the affidavit, the juror swears:

> I remember reading a document during deliberations which stated that Mr. Hoffner allegedly had some behavior problems while incarcerated.  This was another significant factor in my vote to recommend the death penalty for Mr. Hoffner.

[Apx. Vol. 6 at 91.]  The Court disagrees that the state court's application of the rule here violated the Constitution.  To the extent the affidavit proves prejudice by showing the mental processes of the juror, it is permissibly inadmissible under current Supreme Court and Sixth Circuit precedent.[24/]

---

[23/] Without a specific citation to the record from the Petitioner, the Court assumes this is what Hoffner is referring to with this claim.

[24/] To the extent the affidavit shows that the jury allegedly saw extraneous prejudicial information, the affidavit is redundant.  The record itself shows that the documentation was provided to the jury during deliberations.  Therefore, (continued...)

Case No. 3:05-cv-00687
Gwin, J.

*See Tanner v. United States,* 483 U.S. 107, 117-27 (1987) (upholding and explaining the policy reasons and legislative history of the similar federal rule rendering juror testimony of mental processes during deliberations inadmissible); *see also United States v. Blackwell*, 459 F.3d 739, 769 (6th Cir. 2006).[25/]

The second sub-claim, regarding the clarity of the burden of proof, is also procedurally defaulted because it could have been raised on direct appeal.  The Petitioner counters that this claim required evidence outside of the record, again in the form of the same juror affidavit suggesting possible jury confusion as to the correct burden of proof,[26/] and should have been reviewed on the merits during post-conviction review.  The Court repeats its analysis above regarding the admissibility of juror affidavits indicating their mental processes during deliberations.  Also, even when juror testimony is admissible to determine whether an error occurred, "federal courts must determine whether error was harmless from the perspective of the rational juror, not from the perspective of the individual jurors in a particular case."  *United States v. Blackwell*, 459 F.3d 739, 769 (6th Cir. 2006).  Further, once again, if the trial judge gave an instruction contrary to law,

---

[24/](...continued)
this aspect of the claim did not require evidence outside of the record.

[25/]In his traverse, the Petitioner suggests a potential ineffective assistance of counsel claim based on these same facts: "Counsel also may have allowed a document purportedly addressing Hoffner's prior problems while incarcerated for prior convictions to be provided to the jury."  [Doc. 50 at 35, 48.]  The Petitioner did not raise this claim in his petition and does not develop this claim in his traverse (either procedurally or substantively), and therefore, this Court will not review it.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it.")  Like his fifth claim presented in this section, the Court notes that the Ohio Court of Appeals found this related ineffective assistance of counsel claim barred by res judicata because it could have been raised on direct appeal.  *See State v. Hoffner*, 2002 WL 31162813, at *5-6, fn. 3 (Ohio Ct. App., Lucas County, Sept. 30, 2002).  The Petitioner makes no argument for how he would overcome this state procedural bar here.

[26/] *See supra* footnote 10 for the relevant text in the affidavit.

Case No. 3:05-cv-00687
Gwin, J.

Hoffner did not need an affidavit from a juror to raise this issue on direct appeal, especially one

based on conjecture as is the case here.

Thus, procedural default bars review by this court of both sub-claims.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a

constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; FED. R.

APP. P. 22(b).


**F.  Sixth Ground for Relief: Right to Testify**

In his sixth ground for relief, Hoffner argues that the failure of the trial court judge to

affirmatively determine whether Hoffner knowingly, voluntarily and intelligently waived his right

to testify during the trial was constitutional error.  [Docs. 29 at 24-25, 50 at 62-70.]

The Court agrees with the Ohio Supreme Court's result on the Petitioner's direct appeal.  *See*

*State v. Hoffner*, 811 N.E.2d 48, 58 (Ohio 2004).  Ohio and Sixth Circuit precedent make it clear

that a judge is *not* required to affirmatively determine whether a defendant has adequately waived

his right to testify unless there is some indication that the defendant wishes to testify and is

prevented from doing so.  *See U.S. v. Chambers*, 441 F.3d 438, 448 (6th Cir. 2006) ("Barring any

statements or actions from the defendant indicating disagreement with counsel or the desire to

testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether

the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant

has waived the right on the record.") (quoting *U.S. v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000)).

*See also State v. Bey*, 709 N.E.2d 484, 497 (Ohio 1999).  There is no evidence in the record

Case No. 3:05-cv-00687
Gwin, J.

indicating that at trial Hoffner wished to testify, but was precluded from doing so.[27/]  Accordingly,

the Petitioner's sixth claim fails.

The Court further finds that the Petitioner has failed to make a substantial showing of a

violation of a constitutional right and denies a certificate of appealability on this issue.  28 U.S.C.

§2253(c).


**G.  Seventh Ground for Relief**: *Miranda* **Violation**

In his seventh claim for relief, Hoffner contends that his constitutional rights were violated

when the trial court failed to suppress his confession and other statements to the police.  [Docs. 29-1

at 26-28, 50 at 71-78.]  Hoffner alleges that these statements are inadmissible by the failure of

police to follow the standards outlined in *Miranda* and subsequent cases.  He specifically argues

that the statements he made at Wilkerson's home violated *Miranda* and therefore taint his

subsequent statements.  *Id.*  This claim is properly preserved for review.

In considering this argument, the Ohio Supreme Court found:

---

[27/] The only evidence the Court finds related to this claim is the Petitioner's 1997 affidavit that says:

My attorneys interviewed me primarily on the basis of police reports and did not thoroughly hear my
side of the case.  As a result, they advised that I not take the stand during the guilt phase of the trial.
Had I taken the stand, I would have testified that it was Archie Dixon's idea, not mine, to kill Chris
Hammer. . . .

The foregoing facts pertaining to my lack of involvement in Chris Hammer's death were not presented
at trial . . . although my attorneys could have readily presented these facts through my testimony.
These facts were not presented because I was not interviewed thoroughly by my attorneys.

[Apx. Vol. 6 at 109-110.]  While Hoffner now indicates that he would have liked to testify, he does not provide any
evidence, even in his own affidavit, that at the time of the trial, he wished to testify or that he communicated that desire
to either counsel or the trial court or that either counsel or the trial court prevented him from doing so against his wishes.
The Court also notes that Hoffner's real complaint in this affidavit appears to be with his counsel's inadequate
investigation and advice, claims of ineffective assistance of counsel that he does not raise before this Court.

Case No. 3:05-cv-00687
Gwin, J.

{¶ 17}  On November 9, 1993, Hoffner and Dixon were living at Wilkerson's house. At approximately 11:00 a.m. on that date, Toledo police officers executed a search warrant at the Wilkerson residence and arrested Dixon for forgery.

{¶ 18}  During the search, Lieutenant Charles Hunt discovered Hoffner covered with a blanket lying on a couch in the family room.  Hunt, with his weapon drawn but pointed in the air, ordered Hoffner off the couch.  Hunt then pulled the blanket away from Hoffner, holstered his weapon, and searched Hoffner for weapons.  To prevent Hoffner from interfering while police searched the premises, Hunt asked Hoffner to sit in a nearby chair.[28]

{¶ 19}  Hunt and Detective Robert Leiter then searched the family room. During their search, the detectives asked Hoffner whether he knew anything about Hammer's disappearance.  Hoffner denied all knowledge of Hammer's whereabouts.

{¶ 20}  After Hunt and Leiter completed their search of the family room, Hoffner asked to speak with them. Hoffner told police that Dixon and Hammer had gotten into an argument and that Dixon had "[taken] care of him," had buried Hammer's body in the woods, and had sold Hammer's car.  At no point did Hoffner implicate himself.

{¶ 21}  Once Hoffner had implicated Dixon, Hunt and Leiter asked whether Hoffner would go downtown to make a statement. Hoffner agreed.  On the drive to the police station, Leiter told Hoffner that officers would begin searching the wooded area where Hoffner had said Hammer's body was buried and that any other information Hoffner had would be helpful.  Leiter again asked whether Hoffner had had anything to do with Hammer's disappearance, and Hoffner said he had not.  Hoffner subsequently asked the detectives to stop the car and indicated that he had additional information but said he did not want to get into trouble.  Leiter told Hoffner that he could be charged with obstruction if he withheld information, but if he told the truth and was not involved in any crimes, he had nothing to worry about.  At that point, Hoffner told the detectives where they could find Hammer's body.

{¶ 22}  After leading the detectives to Hammer's grave, Hoffner again agreed to go to the police station to give a statement.  On the way to the station, the detectives stopped at a fast-food restaurant, and Hoffner was given food and a drink.  At the station, Leiter advised Hoffner of his *Miranda* rights but did not arrest him.  Hoffner

---

[28] Although the Petitioner does not mention these facts in his briefing, the Court adds that Officer Bryce also testified that she asked Hoffner to sit down and that in response to Hoffner asking to smoke a cigarette, she probably told him "not at this time."  [Trial Transcript, Vol. 2, Pretrial Hearings Part B, April 28, 1994, at 75-76.]  However, Officers Scanlon and Hunt later testified that they remembered seeing Hoffner smoke during the time of the search.  [Trial Transcript, Vol. 2, Pretrial Hearings Part B, April 29, 1994, at 24; May 3, 1994 at 22-23.]

Case No. 3:05-cv-00687
Gwin, J.

confirmed that he understood his rights and signed a waiver-of-rights form. At approximately 3:30 p.m., Hoffner gave a taped statement describing Dixon's murder of Hammer. After the interview, Leiter and Detective Phil Kulakoski drove Hoffner back to Wilkerson's house. Hoffner then packed his belongings and drove himself to his mother's house in Perrysburg.

{¶ 23}  At approximately 7:30 p.m. on November 9, Dixon confessed to Hammer's murder and, in the process, implicated Hoffner. Shortly thereafter, police obtained an arrest warrant for Hoffner. After midnight on November 10, Kulakoski and Leiter arrested Hoffner at his mother's house.

{¶ 24}  Detectives drove Hoffner to the police station, where they again read him *Miranda* warnings. Hoffner signed a waiver-of-rights form and gave a taped statement confessing to Hammer's murder.

{¶ 25}  Hoffner now contends that police should have given *Miranda* warnings to him prior to any questioning during his initial encounter with police at the Wilkerson residence. Hoffner argues that he was in custody because the presence of detectives and uniformed officers during the execution of the search warrant presented a "coercive atmosphere." As a result, Hoffner submits that any statements he made during the search should have been suppressed. Hoffner further contends that all subsequent statements, including his confession, were inadmissible because they were tainted by the earlier *Miranda* violation.

{¶ 26}  Contrary to Hoffner's argument, *Miranda* warnings are not required simply because the questioning takes place in a coercive atmosphere. *See Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (a coercive environment does not automatically convert a noncustodial situation into one requiring *Miranda* warnings). The procedural safeguards identified in *Miranda* apply only when one is subjected to custodial interrogation. *Miranda v. Arizona* (1966), 384 U.S. 436, 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694.

{¶ 27}  *Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave. *Thompson v. Keohane* (1995), 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383. Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry" of whether there was a " 'formal arrest or

Case No. 3:05-cv-00687
Gwin, J.

restraint on freedom of movement' of the degree associated with a formal arrest."
*California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275,
quoting *Oregon v. Mathiason*, 429 U.S. at 495, 97 S.Ct. 711, 50 L.Ed.2d 714.

{¶ 28}  We hold that Hoffner was not in custody for *Miranda* purposes during the
execution of the search warrant and that, therefore, he was not entitled to its
protective warnings.  When the search warrant was served, detectives informed
Hoffner as to the reasons for the search and asked whether he knew anything about
Hammer's disappearance.  Such questioning does not require *Miranda* warnings.
"General on-the-scene questioning as to facts surrounding a crime or other general
questioning of citizens in the fact-finding process is not affected by our holding."
*Miranda*, 384 U.S. at 477, 86 S.Ct. 1602, 16 L.Ed.2d 694.  At the time, police were
questioning Hoffner as a witness, not a suspect, and police did not arrest him or
restrain him in any manner.  See *State v. Richey* (1992), 64 Ohio St.3d 353, 361, 595
N.E.2d 915 (police not required to issue *Miranda* warnings, since Richey was
initially interviewed only as a possible witness and was not under arrest or in
custody).

{¶ 29}  Moreover, there is no evidence that police officers coerced Hoffner into
making any statements.  After initially denying all knowledge of Hammer's
disappearance, Hoffner asked to speak with Leiter and Hunt.  Then he voluntarily
offered information that Dixon had killed Hammer.  Hoffner's statements were not
made in response to police questioning, nor were they compelled by police in any
manner.  See *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (any
statement given freely and voluntarily without compelling influences is admissible).

{¶ 30}  Police did briefly restrict Hoffner's movement during the initial stages of the
search in order to secure the location and search the area for weapons and evidence.
Nevertheless, directing Hoffner to stay in a specific location (i.e., sit in a chair) was
reasonable in light of the circumstances.  After the weapons search was completed,
police never told Hoffner that he could not leave the premises, nor did Hoffner ever
state that he wanted to leave.[29/]

{¶ 31}  Events after Hoffner left the Wilkerson residence with Leiter and Hunt
further confirm that Hoffner was not in custody.  Hoffner voluntarily agreed to go
to police headquarters to give a taped statement.  On the way to the station, Hoffner
offered to direct police to the location of Hammer's body.  Police did not threaten
Hoffner or make any promises in exchange for this information.  Again, police had

---

[29/] Again, although the Petitioner does not mention this in his briefing, the Court notes that Officer Bowsher
testified that he and Officer Carroll accompanied Hoffner to his bedroom at one point to get a shirt and shoes.  [Trial
Transcript, Vol. 2, Pretrial Hearings Part B, June 1, 1994 at 6-7.]  The Ohio Supreme Court likely did not mention
Bowsher's testimony because his recollection appeared so weak.

Case No. 3:05-cv-00687
Gwin, J.

{¶ 31} not arrested Hoffner, nor was he handcuffed or restrained in any manner.  In fact, while leading Lieutenant Hunt to Hammer's grave, Hoffner was, at one point, ahead of him by 30 to 40 yards, and, at times, out of his sight.

{¶ 32}  After arriving at the station, detectives read Hoffner his *Miranda* rights but again did not place him under arrest.  Hoffner stated that he understood his rights, agreed that he was not under the influence of drugs or alcohol, and signed a waiver-of-rights form.  Hoffner agreed that he came to the station of his own free will and acknowledged that police had not threatened or promised him anything in return for his statement.  After Hoffner gave a taped statement, police drove him back to Wilkerson's house, and he then packed his belongings and drove himself to Perrysburg.

{¶ 33}  Finally, after he was arrested and taken into custody on November 10, detectives again issued *Miranda* warnings to Hoffner.  He then executed a voluntary waiver of his rights before confessing to his part in Hammer's murder.

{¶ 34}  Because Hoffner was not under arrest or in custody during the execution of the search warrant or when he directed detectives to Hammer's body, police were not required to issue *Miranda* warnings. Moreover, Hoffner was not in custody at the police station when he was interviewed on November 9 as a witness only.  Finally, prior to his interview at the police station on November 9 and again after his arrest on November 10, he executed a valid, written waiver of his *Miranda* rights.  All of Hoffner's statements regarding Hammer's disappearance and murder were voluntarily made and properly admitted at trial.

{¶ 35}  Accordingly, Hoffner's first proposition of law is overruled.

*State v. Hoffner*, 811 N.E.2d 48, 52-55 (Ohio 2004).

Once again, the Court finds that the Ohio Supreme Court correctly identified and reasonably applied federal precedent to this case's facts.  Specifically, as to Hoffner's statements at Wilkerson's home, at the burial site, and on the way to the police station, the Ohio Supreme Court reasonably determined that the police officers did not subject Hoffner to custodial interrogation.[30]

---

[30]

While at Wilkerson's home under the factual scenario described above by the Ohio Supreme Court, Hoffner emphasizes that an officer brandished a weapon and ordered him to stay in a chair to suggest that he was in custody. However, when considering the totality of the circumstances, the Sixth Circuit has found that stopping or directing a defendant to a location such that he temporarily perceives he may not leave, even in conjunction with displaying a

(continued...)

Case No. 3:05-cv-00687
Gwin, J.

As a result, the officers did not need to give Hoffner the *Miranda* warnings.  Accordingly, the Court

need not address Hoffner's argument that his later statements were tainted by the alleged illegality

of these earlier statements.  Therefore, the Court cannot issue Hoffner his requested writ of habeas

corpus on the basis of his seventh ground for relief.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a

constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; FED. R.

APP. P. 22(b).

## H. Eighth Ground for Relief

The Petitioner "voluntarily drops this claim for relief."  [Doc. 50 at 79.]

---

30/(...continued)

weapon on some occasions, does not necessarily create a custodial situation.  *See e.g.*, *United States v. Wright*, 220 Fed.Appx. 417, 420-21 (6th Cir. 2007); *United States. v. Robinson*, 217 Fed.Appx. 503, 508 (6th Cir. 2007); *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003) ("Although Swanson was not free to leave during the questioning, the restraint exercised never reached the level associated with 'formal arrest or a coercive context tantamount to custody.'") (citation omitted).  The location of Wilkerson's residence was a familiar, not a coercive, location.  The Court does note that the nature of some of the detectives' questions inquiring into whether Hoffner had knowledge of or involvement in Hammer's disappearance suggest some coercion.  However, accepting the Ohio high court's factual conclusion without clear and convincing evidence to the contrary, the purpose of the questioning did not appear dangerously coercive as the detectives generally treated Hoffner more as a witness than as a suspect.  Further, the record indicates that the questioning directed at Hoffner was brief until he voluntarily sought out the officers to provide additional information.  As the Sixth Circuit has said before, "[t]he possibility that [the Petitioner] may not have been aware of the consequences of his participation in the interviews does not mean that he was in custody."  *See Mason v. Mitchell*, 320 F.3d 604, 632 (6th Cir. 2003).

While on the way to the police station, Hoffner presents no facts suggesting that his freedom of movement was restricted.  To the contrary, the record indicates that Hoffner voluntarily agreed to go to the station with the detectives and was free to leave when he chose, as evidenced in part by his departure to his mother's home at the conclusion of his statement implicating Dixon.  Also, the officers' statements warning Hoffner about obstruction charges do not render the interaction custodial.  *See United States v. Crossley*, 224 F.3d 847, 862 (6th Cir. 2000).  Similarly, Hoffner asked the police to pull over and then turn around to go to Hammer's burial site.  Once at the site, Hoffner again was free to move as he pleased.  His liberty to move is further demonstrated by the fact that when he showed the officers the burial site, at times he was thirty to forty yards ahead of them and out of their sight.  *See United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998) ("Police officers intending to effectuate a custodial situation simply do not afford detainees that kind of unrestrained liberty.").  Thus, under *Miranda*, this Court cannot find that the Ohio Supreme Court unreasonably applied federal law in finding Hoffner's trip to the station and the burial site noncustodial.  *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (finding station interrogation noncustodial in part because the defendant voluntarily came to the police station and was free to leave).  *See also Biros v. Bradley*, 422 F.3d 379, 390 (6th Cir. 2005).

-54-

Case No. 3:05-cv-00687
Gwin, J.

## I. Ninth Ground for Relief

The Petitioner "concedes this issue has been defaulted."  [Doc. 50 at 80.]


## J.  Tenth Ground for Relief: Reasonable Doubt Definition

In his tenth ground for relief, Hoffner argues that Ohio's reasonable doubt definition,  that

the trial court used in Hoffner's case, is unconstitutional.  [Docs. 29 at 32-34, 50 at 81-82.]  Ohio

law provides:

> "Reasonable doubt" is present when the jurors, after they have carefully considered
> and compared all the evidence, cannot say they are <u>firmly convinced</u> of the truth of
> the charge. It is a doubt based on reason and common sense. Reasonable doubt is not
> mere possible doubt, because everything relating to human affairs or depending  on
> moral evidence is open to some possible or imaginary doubt. "Proof beyond a
> reasonable doubt" is proof of such character that an ordinary person would be
> <u>willing to rely and act</u> upon it in the most important of his own affairs.

O.R.C. § 2901.05(D) (emphasis added on parts that Hoffner challenges).  In Hoffner's case, the

trial court judge instructed the jury using this definition during both the guilt and the penalty phases.

[Trial Transcript Vol. 6 at 1384-85, Vol. 8 at 2009-10.]  As underlined above, the Petitioner

specifically takes issue with the "firmly convinced" and the "willing to rely and act upon" language.

Respondent Bradshaw argues that this claim is procedurally defaulted.  [Doc. 45 at 137.]

Bradshaw presents an unavailing argument.  Under *Maupin*, Hoffner did comply with Ohio's

applicable procedural rule.  Namely, Hoffner made a pre-trial motion urging dismissal of the murder

specifications on the argument, *inter alia*, that Ohio's definition of "reasonable doubt" violates the

United States Constitution.  [Apx. Trial, Part A, Vol. 1, 220-27.]  The trial court denied the motion.

[Apx. Trial, Part B, Vol. 2, 176.]  Under Ohio Rule of Criminal Procedure 51, the Petitioner did not

need to object again to preserve the claim for review.  *See* Ohio R. Crim. P. 51 ("An exception, at

Case No. 3:05-cv-00687
Gwin, J.

any stage or step of the case or matter, is unnecessary to lay a foundation for review, whenever a matter has been called to the attention of the court by objection, *motion*, or otherwise, *and the court has ruled thereon*.") (emphasis added).  Thus, the Ohio appellate courts erred in finding that the Petitioner waived this claim and in applying plain error review.  Under the *Maupin* analysis, the Petitioner complied with the state rule, and this Court will review the claim.

The Ohio Supreme Court approved of the "reasonable doubt" definition.  *See State v. Hoffner*, 811 N.E.2d 48, 58 (Ohio 2004).  Despite Petitioner's argument to the contrary, Ohio's definition of reasonable doubt passes constitutional muster.  *See White v. Mitchell*, 431 F.3d 517, 533-34 (6th Cir. 2005) ("We have specifically ruled that Ohio's articulation of the reasonable doubt standard does not offend due process."); *Coleman v. Mitchell*, 268 F.3d 417, 437 (6th Cir. 2001) (upholding nearly identical instructions in the face of a challenge to the "firmly convinced" language); *Thomas v. Arn*, 704 F.2d 865, 869 (6th Cir. 1982) ("Ohio's statutory definitions of reasonable doubt and proof beyond a reasonable doubt, when read as a whole and taken in the context in which the instructions are presented here, do not offend due process or any other federally guaranteed constitutional right.").  *See also Holland v. United States*, 348 U.S. 121, 140 (1954) (despite discomfort with the "willing to act upon" language, "we believe that the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some.").  Thus, while the Court acknowledges some other courts' discomfort with and disapproval of some of the language employed in Ohio, Hoffner does not show that the Ohio Supreme Court acted contrary to or unreasonably applied federal law.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; FED. R.

-56-

Case No. 3:05-cv-00687
Gwin, J.

App. P. 22(b).

### K.  Eleventh Ground for Relief: Proportionality

In his eleventh ground for relief, Hoffner argues that Ohio's system of proportionality review is unconstitutional.  He mainly contends that Ohio's proportionality review offends the U.S. Constitution by excluding comparison of similar cases where the death penalty was not imposed and instead, finding proportionalty if even a single defendant with similar aggravating factors has received the death penalty.  [Docs. 29 at 35-39, 50 at 83-90.]  He also critiques the alleged cursory proportionality review of the Ohio courts.  *Id.*  His arguments lack merit.

The Supreme Court has held that the U.S. Constitution does not require a state appellate court to compare a death sentence with the penalties imposed in similar cases.  *See Pulley v. Harris, 465 U.S. 37, 43-51 (1984).*  Further, the Sixth Circuit has repeatedly held that Ohio's proportionality review passes constitutional muster.  *See e.g., Getsy v. Mitchell, 495 F.3d 295, 305-6 (6th Cir. 2007); Williams v. Bagley, 380 F.3d 932, 962 (6th Cir. 2004); Buell v. Mitchell, 274 F.3d 337, 367-69 (6th Cir. 2001).*

Here, both Ohio appellate courts conducted a proportionality review.  *See State v. Hoffner, 811 N.E.2d 48, 66 (Ohio 2004); State v. Hoffner, 2001 WL 279768, at *18 (Ohio Ct. App., Lucas County, Mar. 23, 2001).*  The Ohio courts did not violate the U.S. Constitution by only comparing Hoffner's case to those of others sentenced to death.  *See e.g., Williams, 380 F.3d at 962; Wickline v. Mitchell, 319 F.3d 813, 824 (6th Cir. 2003)* ("In limiting proportionality review to previous cases in which the death penalty has been imposed, the Ohio Supreme Court has acted within the wide latitude allowed."); *Buell, 274 F.3d at 369* (Because "proportionality review is not required by the

-57-

Case No. 3:05-cv-00687
Gwin, J.

Constitution, states have great latitude in defining the pool of cases used for comparison."). Nor

did the brief nature of the Ohio courts' discussions and citations constitute a violation of or

unreasonable application of federal law. *See* *McCleskey v. Kemp*, 481 U.S. 279, 308 (1987) (Where

the court imposes the sentence based "'on the particularized nature of the crime and the

particularized characteristics of the individual defendant,' we lawfully may presume that

McCleskey's death sentence was not 'wantonly and freakishly' imposed, and thus that the sentence

is not disproportionate." (citations omitted)). *See also* *Lawson v. Warden, Mansfield Corr. Inst.*,

197 F.Supp.2d 1072, 1099 (S.D. Ohio 2007) (rejecting argument that proportionality review was

cursory).  The Court also notes that Archie Dixon received the same death sentence for his

involvement in burying Chris Hammer alive. *State v. Dixon*, 101 Ohio St.3d 328 (Ohio 2004).

Therefore, the Court cannot grant Hoffner a writ of habeas corpus based on his eleventh

ground for relief.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a

constitutional right on this claim to issue a certificate of appealability on this claim.  28 U.S.C.

§2253; FED. R. APP. P. 22(b).


**L.  Twelfth Ground for Relief: Cumulative Error**

In his twelfth ground for relief, Hoffner argues that the cumulative effect of the errors in this

case violated his constitutional rights.  [Doc. 29 at 40.]  The Respondent counters that although

Hoffner brought a cumulative error claim in his post-conviction proceedings, that claim rested on

a "vastly different group of factual and legal arguments"; thus, Petitioner has not exhausted "[t]his

particular constitutional claim."  [Doc. 45 at 145.]  The Warden also argues that the Petitioner

Case No. 3:05-cv-00687
Gwin, J.

presents a meritless allegation of cumulative error, as all claims lack merit and cannot together constitute a meritorious claim on cumulative grounds.  *Id.* at 146.  Finally, the Respondent says that this claim cannot stand under current Supreme Court precedent.  *Id.* at 145.

The Sixth Circuit has ruled that "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).  *See also Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).

Furthermore, this Court finds that the above claims, whether considered individually or cumulatively, do not warrant habeas relief in this case.

Thus, the Court denies Hoffner's twelfth ground for relief.

The Court finally finds that the Petitioner has made a sufficient showing of denial of a constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; FED. R. APP. P. 22(b).

## M.  Thirteenth Ground for Relief: Constitutionality of Ohio's Death Penalty Statutes[31/]

In his thirteenth ground for relief, Hoffner argues that Ohio's statutory provisions governing the imposition of capital punishment violate his constitutional rights.  [Doc. 29 at 41-47.]  The Respondent argues that Petitioner failed to raise some of these sub-claims in state court.  [Doc. 45 at 147.] The Petitioner concedes that he procedurally defaulted those claims not raised previously.

---

[31/] The Court addresses Hoffner's arguments in this section.  The Court does not address what Hoffner does not argue.  For example, Hoffner says that he challenges Ohio's death penalty schemes as applied in his case, and yet he offers no argument as to how Ohio unconstitutionally applied its laws to him in this section.  [Doc. 29 at 41.]  The Court cannot make Hoffner's arguments for him.

Case No. 3:05-cv-00687
Gwin, J.

[Doc. 50 at 92.]  Even so, the Court will briefly address each sub-claim below.[32/]

First, Petitioner Hoffner argues that the death penalty violates the Eighth Amendment's prohibition against cruel and unusual punishment generally.  [Doc. 29 at 41.]  In particular, Hoffner suggests that the death penalty devalues human dignity and is outside the limits of civilized standards.  *Id.*  As stated by the Supreme Court, legislative measures represent a way in which to gauge contemporary standards on punishment.  *Gregg v. Georgia*, 428 U.S. 153, 174-76 (1976).  Thus, where a large number of state legislatures have enacted the death penalty, a court will presume the validity of such measures.  *Id.* at 175.  Further, the Ohio Revised Code specifically lists capital punishment crimes to avoid random imposition of the death penalty.  O.R.C. § 2929.04.  An Ohio jury found Hoffner guilty of such an eligible crime and then recommended the sentence of death.  The Ohio courts affirmed the decision on appeal.  In this case, Hoffner's punishment does not violate the Eighth Amendment.  Nor does the death penalty generally constitute a per se violation of the Eighth Amendment under current precedent.  *Gregg*, 428 U.S. at 175-87.  *See also* *Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004).

Hoffner further states that Ohio's death penalty statutory scheme unconstitutionally affords the prosecutor "virtually uncontrolled discretion" in determining whom to charge with a capitally-eligible offense.  [Doc. 29 at 42.]  In *Gregg*, the Supreme Court noted that prosecutorial discretion in capital proceedings does not implicate unconstitutional arbitrary and capricious decision-making.  *See* *Gregg*, 428 U.S. at 199, 225.  Here, Hoffner presents no evidence that the actors in his particular case acted in an arbitrary, capricious, or discriminatory manner.  Further, the Sixth Circuit

---

[32/] The Court also reviews each sub-claim on its merits because, despite the Petitioner's concession, Hoffner did raise all but one of these sub-claims in some form on direct appeal to the Ohio Supreme Court.  *See* [Appx. Vol. 5 at 130-36.].

Case No. 3:05-cv-00687
Gwin, J.

has recently rejected this argument.  *See Williams v. Bagley, 380 F.3d 932, 963 (6th Cir. 2005).*
Thus, the Court rejects this claim.

Hoffner next argues that Ohio fails to "require the conscious desire to kill or premeditation/deliberation as the culpable mental state" for the imposition of the death penalty. [Doc. 29 at 42-43.]  However, the Supreme Court has sanctioned lesser criminal states of mind as acceptable levels of culpability to impose the death penalty.  *See Tison v. Arizona, 481 U.S. 137, 157-58 (1987)* (permitting the death penalty for those who act with "the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death").  Thus, the Court rejects the *mens rea* portion of Hoffner's argument.

Hoffner continues that the Ohio death penalty scheme impermissibly requires a defendant to prove mitigating factors by a preponderance of the evidence.  [Doc. 29 at 42-43.]  The United States Supreme Court has never held that "the state must affirmatively structure in a particular way the manner in which juries must consider mitigating evidence."  *Buchanan v. Angelone, 522 U.S. 269, 276 (1998)*.  Moreover, the Supreme Court has rejected the claim that requiring a defendant to establish mitigating evidence by a preponderance of the evidence offends the Constitution.  *See Walton v. Arizona, 497 U.S. 639, 649-51 (1990), overruled in part by Ring v. Arizona, 536 U.S. 584 (2002)*.  *See also Gall v. Parker, 231 F.3d 265, 324 (6th Cir. 2000)* ("[T]here is no constitutional prohibition on states requiring that mitigating circumstances be proved by preponderance of the evidence.").  In response to another of Hoffner's sub-claims here, it follows that Ohio's failure to require the State to prove the absence of mitigating factors does not violate the Constitution either. *See Walton, 497 U.S. at 649-51.*

Hoffner next argues the unconstitutionality of Ohio's death penalty statutes on the basis that

Case No. 3:05-cv-00687
Gwin, J.

they permit proof of aggravating circumstances during the guilt phase of the trial.  [Doc. 29 at 42-43.]  The Petitioner is incorrect.  "To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase."  *Tuilaepa v. California*, 512 U.S. 967, 971-72 (1994) (citations omitted).  *See also Cooey v. Coyle*, 289 F.3d 882, 924 (6th Cir. 2002).  Accordingly, the Court rejects Hoffner's contention.

Hoffner also challenges that the scheme devalues mitigation evidence because the Ohio statutes do not contain a proper "weighing and consideration" of mitigating factors as against aggravating circumstances.  [Doc. 29 at 42, 44.]  Because the Supreme Court has never held that "the state must affirmatively structure in a particular way the manner in which juries must consider mitigating evidence," *Buchanan*, 522 U.S. at 276, without further argument from Hoffner, the Court rejects this claim.

Next Hoffner argues that Ohio law fails to narrow the class of individuals eligible for the death penalty because it allows the jury to consider an element of aggravated murder as an aggravating circumstance at the mitigation phase of trial.  [Doc. 29 at 42, 44.]  However, Supreme Court and Sixth Circuit precedent say that the Constitution permits an aggravating circumstance to duplicate an element of the capital crime charged if the definition of the offense itself sufficiently narrows the class of death-eligible defendants. *See Cooey*, 289 F.3d at 926-27 (citing *Williams v. Taylor*, 529 U.S. 362,  393 n.16 (2000) (citing *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988)). As the *Cooey* court stated,

> Applying the holding of *Lowenfield* to Mr. Cooey's case, it would be entirely within constitutional bounds for Ohio to provide similar definitions for both "aggravated murder" (in Ohio Rev.Code § 2903.01(B)) and "aggravating circumstances" (in

Case No. 3:05-cv-00687
Gwin, J.

> Ohio Rev. Code § 2929.04(A)(7)). What matters is that Ohio has, *in the first*
> *instance*, narrowed the class of those eligible for the death penalty by requiring some
> aggravated form of murder. Accordingly, this claim of Mr. Cooey does not make a
> substantial showing of a constitutional violation.

*Cooey*, 289 F.3d at 927. Hoffner presents no argument that the definition of the offense itself fails to sufficiently narrow the death-eligible class here. Thus, this argument fails.

Next Hoffner claims that the Ohio statutory scheme is unconstitutional because it does not require sentencers to determine that death is the only appropriate remedy as is required by the reviewing courts under O.R.C. § 2929.05. [Doc. 29 at 44-45.] Hoffner says, "Due process requires that the same standards apply at both levels." *Id.* at 45. The Petitioner cites no case law to support his claim. The Court cannot make Hoffner's argument for him, especially when the appellate appropriateness review is meant to provide defendants like Hoffner *additional* protection. In response to Hoffner's concern that the appellate courts will not know what the sentencers considered in their decisions as they conduct their review, the Court notes that trial judges must write opinions explaining their decisions in support of death. *See* O.R.C. § 2929.03(F). Finally, to the extent Hoffner argues that the scheme violates the Constitution because the State need not prove death is the only appropriate remedy, this Court agrees with another district court's recent response: "No such constitutional mandate exi[s]ts. Moreover, the Ohio scheme provides for an appropriateness review on direct appeal." *See Otte v. Houk*, 2008 WL 408525, *49 (N.D. Ohio 2008). *See also Greer v. Mitchell*, 264 F.3d 663, 691 (6th Cir. 2001).

Hoffner also says that Ohio's death penalty statutory scheme unconstitutionally encourages capital defendants to plead guilty, thereby infringing on defendants' rights to a jury trial. [Doc. 29 at 45.] The Petitioner specifically argues that Ohio R. Crim. P.11(c)(3) violates the Constitution

Case No. 3:05-cv-00687
Gwin, J.

because it imposes an impermissible risk of death on capital defendants who choose to exercise their right to a jury trial.  Under the rule, a defendant who pleads guilty or no contest can benefit from a trial judge's discretion to dismiss the specifications "in the interests of justice."  Ohio R. Crim. P.11(c)(3).  However, defendants who seek a jury trial receive no similar possibility of dismissal.

Procedures that allow defendants to plead guilty and avoid a death sentence impermissibly burden a defendant's right to a jury.  *See United States v. Jackson*, 390 U.S. 570 (1968).  Ohio's law, however, does not allow defendants to plead guilty and automatically avoid a death sentence.  *See State v. Buell*, 22 Ohio St. 3d 124, 138 (Ohio 1986).  Thus, the Court finds that this claim is not supported.  *See Cooey v. Coyle*, 289 F.3d 882, 924-25 (6th Cir. 2002).

Hoffner next challenges Ohio's appellate review of death sentences.  [Doc. 29 at 42, 45-46.] The Court addressed Hoffner's critiques of Ohio's proportionality review in its analysis of his eleventh claim.  The Court also already addressed Hoffner's suggestion that Ohio court's alleged cursory review violates the Constitution in that same analysis.  As to Hoffner's critique of Ohio's appropriateness review, Hoffner makes no other argument as to how the Ohio courts fail in implementing their appropriateness review.  Without more, the Court rejects Hoffner's arguments with regard to the adequacy of Ohio's appellate procedures.

Hoffner next argues that Ohio infringes upon his constitutional right to life because the death penalty is not the "least restrictive means" of achieving the various state interests associated with this punishment.  [Doc. 29 at 46-47.]  However, in the context of an Eighth Amendment challenge, the Supreme Court has stated:

We may not require the legislature to select the least severe penalty possible so long

-64-

Case No. 3:05-cv-00687
Gwin, J.

> as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people. . . .
>
> For nearly two centuries, this Court, repeatedly and often expressly, has recognized that capital punishment is not invalid Per se.

*Gregg v. Georgia*, 428 U.S. 153, 175-78, 183-87 (1976).  Further, the Sixth Circuit rejects this argument under governing Supreme Court precedent: "The imposition of the death penalty has been consistently upheld by the Supreme Court. Until the Court holds to the contrary, we are bound by its decisions." *Greer v. Mitchell*, 264 F.3d 663, 690 (6th Cir. 2001). *See also Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004).

The Court also rejects Hoffner's race discrimination claim given Sixth Circuit precedent:

> Moreover, the Supreme Court has already held that statistical studies purporting to show racial discrimination in the imposition of capital punishment do not lead to a finding of an equal protection violation; in order for a defendant to prove an equal protection violation, he must demonstrate "purposeful discrimination" in his *own* case.

*Cooey*, 289 F.3d at 923 (citing *McCleskey v. Kemp*, 481 U.S. 279, 293-94 (1987)).

The Court finally finds that the Petitioner has made a sufficient showing of denial of a constitutional right on this claim to issue a certificate of appealability.  28 U.S.C. §2253; Fed. R. App. P. 22(b).

## VI.  Conclusion

For the reasons stated above, the Court **DENIES** Hoffner's petition for a writ of habeas

Case No. 3:05-cv-00687
Gwin, J.

corpus.

IT IS SO ORDERED.


Dated: July 23, 2008                          *s/      James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE